# EX PARTE NEWMAN.

Certain Prussian sailors libelled a Prussian vessel in New York in admiralty for wages, less in amount than $2000. The master set up a provision in a treaty of the United States with Prussia, by which it was stipulated that the consuls of the respective countries should sit as judges in "differences between the crews and captains of vessels" belonging to their respective countries; and the consul of Prussia, coming into the District Court, protested against the District Court's taking jurisdiction. The District Court, however, did take jurisdiction, and decreed $712 to the sailors. On appeal the Circuit Court reversed the decree, and dismissed the libel because of the consul's exclusive jurisdiction. *Held*, that mandamus would not lie to the Circuit judge to compel him to entertain jurisdiction of the cause on appeal, and to hear and decide the same on the merits thereof; and that this conclusion of this court was not to be altered by the fact that owing to the sum in controversy being less than $2000, no appeal or writ of error from the Circuit Court to this court existed.

PETITION for writ of mandamus to the United States Circuit judge for the Eastern District of New York; the case being thus:

The Constitution ordains* that the judicial power of the United States shall extend "to all cases of admiralty and maritime jurisdiction."

The 10th article of the treaty of the United States with the King of Prussia, made May 1st, 1828,† contains this provision:

"The consuls, vice-consuls, and commercial agents shall have the right as such to sit as judges and arbitrators *in such differences* as may arise between *the captains and crews of the vessels* belonging to the nation whose interests are committed to their charge, without the interference of the local authorities, unless the conduct of the crews, or of the captain, should disturb the order or tranquillity of the country; or the said consuls, vice-consuls, or commercial agents, should require their assistance to cause their decisions to be carried into effect or supported. It is, however, understood that this species of judgment or arbi-

---

    * Article 3, § 2.                            † 8 Stat. at Large, 378.

tration shall not deprive the contending parties of the rights they have to resort on their return to the judicial authority of their country."

"All treaties made, or which shall be made, under the authority of the United States," it is ordained by the Constitution of the United States,* " shall be the supreme law of the land."

With this treaty thus in force, the mate and several of the crew, all Prussians—who had shipped in Prussia on the Prussian bark Elwine Kreplin, under and with express reference, made in the shipping articles, to the laws of Prussia— got into a difficulty at New York with the master of the bark, who caused several of them to be arrested on charges of mutiny and desertion. They, on the other hand, took the case before the Prussian consul; denying all fault on their part, and claiming wages. The vice-consul heard the case; and decided that on their own showing they had forfeited their wages by the Prussian law applied to their contract of shipment. In addition to this he issued a requisition addressed to any marshal or magistrate of the United States, reciting that the master and crew had been guilty of desertion, and requiring such marshal or magistrate to take notice of their offence.

The mate and men now filed a libel in the District Court at New York against the bark for the recovery of wages (less than $2000), which they alleged were due to them; and the bark was attached to answer. The master of the bark intervening for the interest of the owners answered, and set up various grounds of defence to the claim, some of which arose under the laws of Prussia, and especially he invoked the protection of the clause in the above-quoted treaty between his country and this, and denied the jurisdiction of the District Court, alleging, moreover, that the matter in difference, the claim of the libellants for wages, had already in fact been adjudicated by the Prussian consul at the port of New York.

* Article 6.

Before the cause was tried in the District Court, the consul-general of the North German Union presented to that court his formal protest against the exercise of jurisdiction by that court in the matter in difference.* He invoked therein the same clause in the treaty, and claimed exclusive jurisdiction of such matters in difference; and declared also that, before the filing of the libel the matter had been adjudicated by him, and insisted that his adjudication was binding between the parties, and could only be reviewed by the judicial tribunals of Prussia.

The District Court proceeded notwithstanding to hear and adjudge the case; placing its right to do this, on the ground that the suit before *it* was a proceeding *in rem* to enforce a maritime lien upon the vessel itself, and not a " difference between the captain and crew;" and, also, because the Prussian consul had no power to conduct and carry into effect a proceeding *in rem* for the enforcement of such a lien, and had not in fact passed at all and could not pass upon any such case. Accordingly after a careful examination of the facts, that court decreed in favor of the libellants $712. The case then came by appeal to the Circuit Court. This latter court considered that the District Court had given to the treaty too narrow and technical a construction. The Circuit Court said:

"The master is the representative in this port of the vessel and of all the interests concerned therein. He is plainly so regarded in the treaty. The matter in difference in this cause is the claim for wages. That arises between the crew and the master, either as master or as the representative here of vessel and owners. The lien and the proceeding *in rem* against the vessel appertain only to the remedy. The very first step in this cause is to settle the matter in dispute. If the claim be estab-

* The consul-general of the North German Union was commissioned by the King of Prussia, Prussia being one of the States composing the North German Union; and by certificate of the Secretary of State of the United States, under the seal of that department, it appeared that the Executive Department of the United States recognizes the consuls of the North German Union as consuls of each one of the sovereign States composing that Union, "the same as if they had been commissioned by each one of such States."

lished, then, as incident to the right to the wages, the lien and its enforcements against the vessel follow.   The District Court can have no jurisdiction of the lien, nor jurisdiction to enforce it if it has no 'jurisdiction of the difference or dispute touching the claim for wages.   To hold that the jurisdiction of the consul is confined to cases in which there is no maritime lien, and in which no libel of the vessel could, apart from the treaty, be maintained, is to take from the treaty much of its substance."

The Circuit Court adverted to and relied on the fact, that the Prussian consul 'had 'moreover actually heard the mate and sailors, and pronounced against them.

The Circuit Court accordingly, while it expressed on a general view of the merits its sympathy with the sailors, and a strong inclination to condemn the conduct of the master in the matter, yet was " constrained to the conclusion that the treaty required that the matter in difference should have been left where the treaty with Prussia leaves it, viz., in the hands and subject to the determination of their own public officer."   The result was the dismissal of the libels by the Circuit Court for want of jurisdiction.

Thereupon Newman and the others, by their counsel, *Messrs. P. Phillips and D. McMahon*, filed a petition in *this* court for a writ of mandamus to the Circuit judge, commanding him "·to entertain jurisdiction of the said cause on appeal, and to hear and decide the same on the merits thereof."   The judge returned that the Circuit Court had entertained the appeal, and had heard counsel on all the questions raised in the case, and had decided it; and that the said court had decided that the matter in controversy was within the jurisdiction of the consul under the treaty, and that in the exercise of the jurisdiction so given him, he had decided the matter, and that therefore the court had dismissed the libel.

The question now was whether the mandamus should issue.

The reader will of course remember the provision in the 13th section of the Judiciary Act, by which it is enacted:

" That the Supreme Court shall have power to issue writs of

mandamus, in cases warranted by the principles and usages of law, to any courts appointed or persons holding office under the authority of the United States."

And also the provision of the 22d section, extended by an act of 1803 to appeals in admiralty, by which it is enacted:

"That final judgments and decrees in civil actions . . . in a Circuit Court . . . removed there by appeal from a District Court, where the matter in dispute exceeds the sum or value of $2000, exclusive of costs, may be re-examined and reversed or affirmed in the Supreme Court."

*Messrs. D. McMahon and P. Phillips, in support of the motion:*

The mandamus should issue:

1st. Because the treaty stipulation is unconstitutional. It strips the courts of the United States of the admiralty jurisdiction conferred on them by the Constitution of the United States. It is well settled that admiralty courts have jurisdiction, at their discretion, over foreign vessels within their jurisdiction, and actions *in rem* against them brought by foreign seamen. If then the treaties attempt to confer on a foreign officer exclusive jurisdiction of cases already within the control of admiralty, they violate the Constitution, and are so far null.

2d. The treaty with Prussia has no reference to suits or proceedings *in rem*, and in that respect differs from the case mentioned in the treaty, of a difference between the master and seamen. The proceeding is against the vessel to foreclose a lien, and the owners are brought in incidentally. The master, as such, has no interest, nominal or otherwise, in the suit in question, and it is a misnomer to call the present case a controversy between a master and his crew.

3d. The Prussian consul made no adjudication in the matter *now* in difference, between the libellants and the master.

4th. The treaty is with the kingdom of Prussia, and the tribunals referred to in it are the consuls, vice-consuls, and commercial agents of that government. Now, at the time

of the occurrence of the facts here in controversy, there were no consuls, or vice-consuls, or commercial agents of the kingdom of Prussia in the city of New York, or in the United States, though there are such officers of the North German Union. A treaty stipulation to maintain tribunals independent of our own, in this country, is contrary to the spirit of our institutions, as its effect may be to create in our midst many tribunals independent of our national courts. It should, therefore, be construed strictly.

5th. The consul is estopped from asserting his exclusive jurisdiction, because that he appealed in his " requisition" to our marshals and other magistrates, and prayed them to take cognizance of the case. He cannot be permitted, after doing so, to avail himself of the benefit of the treaty stipulations.

*Messrs. Salomon and Burke, contra :*

This is an attempt to cause this court to review the decision already rendered in the Circuit Court and to direct the Circuit judge to change his decision, and to render a different judgment in a case which cannot be brought before this court by appeal, because the amount in controversy is less than $2000. This cannot be done.

Mandamus cannot perform the functions of a writ of error or of an appeal. This court will never direct in what manner the discretion of an inferior tribunal shall be exercised; but will only, in a proper case, require the inferior court to decide. If the Circuit judge had refused to decide the case, or to enter a decree therein, this court might compel him by mandamus to decide or to enter a decree; but even then it could not by such process have commanded him how to decide it, or what decree to enter. A revision of his judicial decision can only take place by appeal. But here the applicants do not complain that the judge has refused to decide the case, or that he has refused to enter judgment, but they complain that his decision upon some of the questions involved therein, and which were fully argued before, and have been carefully considered and adjudged by him, is

erroneous, and that consequently this court should overrule his judgment in this case.

Now, strictly speaking, this court cannot look into the opinion of the Circuit judge for the purpose of ascertaining on what ground his decision is based with a view of revising it.

It can look only to the record, which shows only that the Circuit Court has entertained the appeal, heard and tried it, and upon such hearing and trial, after due consideration, has ordered that the decree of the District Court be reversed and the libel dismissed. How can this court, then, upon an application for a mandamus, compel him to decide differently?

But, waiving this, no doubt the question arising under the treaty with Prussia has from the beginning been the material question in the controversy. That under the treaty the Prussian consul had exclusive jurisdiction, and had exercised that jurisdiction and decided between the parties, was set up by the claimant in his answer; it was brought before the District Court by the consul's protest; upon that, mainly, the appeal was taken to the Circuit Court. The question involved not only the proper construction of the treaty, but also the examination and adjudication of important facts and circumstances relating to the consul's action in the case. All the points were argued before the Circuit Court, and that court, after consideration, has decided upon the facts and the law. This is in no proper sense a case in which the Circuit Court has refused to entertain or to exercise jurisdiction. It has, in fact, entertained the appeal from the decree of the District Court, and upon consideration has decided that the decree appealed from should be reversed, on three grounds:

*First.* That under the treaty with Prussia, the Prussian consul had jurisdiction of the matter in difference involved in the litigation.

*Second.* That that jurisdiction of the Prussian consul was exclusive.

*Third.* Upon the proofs the court found and decided, that

the Prussian consul *had* adjudicated the matter in difference involved in the litigation, and that the libellants were bound by that adjudication.

If this court can by mandamus review this decision of the Circuit Court, then it can in this manner review every case in which a suit is dismissed on the ground of a former adjudication of the subject-matter between the same parties.

Admiralty courts generally decline to interfere between foreigners concerning seamen's wages, except where it is manifestly necessary to do so to prevent a failure of justice, and then only where the voyage has been broken up, or the seamen have been discharged.* Now, if for this reason, in the proper exercise of his judicial discretion, the Circuit judge, on appeal, had ordered a dismissal of the libel, can it be maintained that by mandamus this court could compel him to reverse his own decision? *Non constat* that, if the Circuit judge had not ordered the dismissal of the libel on account of the treaty and the exercise of the consular jurisdiction, he would not have so ordered on this ground of comity between nations.

The application is for a mandamus directing the Circuit judge to hear the appeal and to decide the same on the merits thereof. What are the *merits* of the controversy? Is not this question of the jurisdiction of the Prussian consul and his decision a part of them? Will this court, by mandamus, determine what is and what is not of " the merits of a controversy?"

*Reply:* The law will leave no one remediless, and the amount in controversy not being $2000, and no appeal existing, and there being no other remedy, the remedy in the premises must be by mandamus. The writ is issued to inferior courts to enforce the due exercise of these judicial powers; " and this not only by restraining their excesses, but also by quickening their negligence and obviating their denial of justice."† While this court will not restrain nor

---

* Gonzales *v.* Minor, 2 Wallace, Jr., 348.

† Ex parte Bradley, 7 Wallace, 375.

direct by mandamus in what manner the discretion of the inferior tribunal should be exercised, it will, in proper cases, require the court to hear and decide. The "principles and usages of law," give the right to a mandamus where a party has a legal right, and no other remedy to enforce it.*

In the case at bar the proposed. mandamus does not usurp the functions of a writ of error or appeal, for no appeal lies, the amount being less than $2000.

The case is this. The Circuit judge refuses to consider and determine, on the merits, a cause over which he has ample jurisdiction, he entertaining the opinion that he has no. jurisdiction, because of the terms of treaty with Prussia. In this court it is submitted that his conclusion is erroneous. No appeal, however, lies. A Circuit judge entertaining very strict, notions of the extent of admiralty jurisdiction, might, in a contest between State and National courts, paralyze the commerce of a great commercial port like New York. Can there be no correction for this? Is a party to be dismissed in a case like this, with the allegation that the writ of mandamus cannot usurp the function of a writ of error, therefore there is no correction?

While it is conceded that the writ of mandamus cannot be used to correct an erroneous judgment of a court of acknowledged jurisdiction, yet it can be invoked to compel a court to exercise its jurisdiction, even though such court be of the opinion it had not jurisdiction. The distinction between the two classes of cases is obvious. The distinction lies between a direction to an inferior tribunal to act, and direction to it how to act. We do not seek to control the Circuit Court's judgment by the mandamus, but only to compel it to entertain jurisdiction of the cause, and then to hear and decide according to the law and the allegations and proofs.

Authorities are clear on the right of a superior tribunal to compel an inferior tribunal to hear a cause and decide it

---

* Phillips's Practice, p. 230.

even after the latter has declined to entertain the cause because of an alleged want of jurisdiction.*

Mr. Justice CLIFFORD delivered the opinion of the court.

Attempt was made in the first place to prosecute the suit in the name of the mate for himself and as assignee of the crew, but the court before entering the decree suggested an amendment, and the crew were admitted as co-libellants, which will render it unnecessary to make any further reference to that feature o'' the pleadings.

Proceedings *in rem* were instituted in the District Court against the bark Elwine Kreplinc, by the mate, for himself and in behalf of the crew of the bark, on the twenty-fourth of August, 1870, in a case of subtraction of wages civil and maritime, and they allege in the libel, as amended, that the bark is a Prussian vessel, and that they are Prussian subjects, and that they were hired by the master and legally shipped on board the bark for a specified term of service, and that they continued well and truly to perform the duties they were shipped to fulfil, and that they were obedient to the lawful commands of the master, until they were discharged. They also set forth the date when they were shipped, the length of time they had served, the wages they were to receive, and the amount due and unpaid to them respectively for their services, and aver that the owners of the bark refuse to pay the amount.

Process was issued and served by the seizure of the bark, and the master appeared, as claimant, and filed an answer. He admits that the appellants shipped on board the bark at the place and in the capacities and for the wages alleged in the libel, but he avers that they signed the shipping articles and bound themselves by the rules, regulations, and directions of the shipping law and rules of navigation of the country to which the bark belonged, and he denies that they well and truly performed their duties, or that they were

* Rex v. Justices of Kent, 14 East, 395; Hull v. Supervisors of Oneida, 19 Johnson, 260; Judges of Oneida County v. The People, 18 Wendell, 92 and 95.

obedient to his lawful commands. On the contrary, he alleges that they, on the day they were discharged, were guilty of gross insubordination and mutinous conduct, that they resisted the lawful commands of the master, and refused to obey the same, and interfered with him in the performance of his duty, and with force and threats prevented him from performing the same, and thereafter, on the same day, deserted from the vessel.

Apart from the merits he also set up the following defences:

1. That the court had no jurisdiction of the matter contained in the libel, because the bark was a Prussian vessel, owned by Prussian citizens, and because the libellants were Prussian subjects belonging to the crew of the vessel, and were also citizens of that kingdom.

Support to that defence is derived from the tenth article of our treaty with that government, which provides that consuls, vice-consuls, and commercial agents of the respective countries, in the ports of the other, shall have the right, as such, to sit as judges and arbitrators in such differences as may arise between the captains and crews of the vessels belonging to the nation whose interests are committed to their charge, without the interference of the local authorities, unless the conduct of the crews, or of the captain, should disturb the order or tranquillity of the country, or the consuls, vice-consuls, or commercial agents should require their assistance to cause their decisions to be carried into effect.*

He set up that provision of the treaty, and prayed that he might have the same advantage of it as if the same was separately and formally pleaded to the libel.

2. That the libellants in signing the shipping articles bound themselves, under the penalty of a forfeiture of wages, not to sue or bring any action for any cause, against the vessel, or the master, or owners thereof, in any court or tribunal except in those of Prussia.

---

* 8 Stat. at Large, 882.

3. That the consul-general of the North German Union, resident in the city of New York, which government included Prussia and other sovereignties, heard and examined the questions of difference between the libellants and the claimant and adjudicated the same; that the libellants appeared before the court on the occasion and presented their claim tò be discharged and their claim for wages, and that the consul, in his character as such, heard and examined their said claims and adjudged that the libellants should return to the vessel, and that no wages were due them or would be due them until they complied with the contract of shipment.

Testimony was taken in the District Court, and the District Court entered a decree in favor of the libellants for the amount due them for their wages, and referred the cause to a commissioner to ascertain and report the amount. Subsequently he reported that the amount due to the libellants was seven hundred and forty-three dollars and forty-one cents. Exceptions were filed by the claimant, and the District Court upon further hearing reduced the amount to seven hundred and twelve dollars and thirty-two cents, and entered a final decree for that amount, with costs of suit. Thereupon the claimant appealed to the Circuit Court, and the record shows that the appeal was perfected, and that the cause was duly entered in that court.

On the fifth of the last month the petition under consideration was filed in this court in behalf of the appellees in that suit, in which they represented that the cause appealed was fully argued before the Circuit Court on the same pleadings and proofs as those exhibited in the District Court, and that the Circuit judge reversed the decree of the District Court and dismissed the libel for want of jurisdiction in the District Court to hear and determine the controversy; that the Circuit judge declined to entertain the cause or to consider the same on the merits, and that no final decree on the appeal has been entered in the Circuit Court or signed by the Circuit judge.

His refusal to entertain jurisdiction and to hear and de-

cide the merits of the case was placed, as they allege, upon the ground that the matter in difference, under the tenth article of the treaty, was within the exclusive cognizance of the consul, vice-consul, or commercial agent therein described, and in consequence thereof that the District Court was without any jurisdiction, which they contend is an error for the following reasons:

(1.) Because the treaty stipulation, if so construed, is unconstitutional and void.

(2.) Because that article of the treaty applies only to disputes between the masters and crews of vessels, and has no reference to suits *in rem* against the vessel.

(3.) Because the record in this case shows that the Prussian authorities refused to entertain jurisdiction of the controversy.

(4.) Because the treaty is with Prussia, and it appears that her government has no consul, vice-consul, or commercial agent at that port.

(5.) Because that the consul who acted in the case requested the District Court to take jurisdiction of the matter in difference.

Hearing was had on the day the petition was presented, and this court granted a rule requiring the Circuit judge to show cause on the day therein named why a peremptory writ of mandamus should not issue to him directing him to hear the appeal of the petitioners and decide the same on the merits. Due service of that rule was made, and the case now comes before the court upon the return of the judge to that rule. He returns, among other things not necessary to be reproduced, as follows: That the cause of the libellants proceeded to a decree in their favor in the District Court; that an appeal from that decree was taken in due form to the Circuit Court for that district; that the Circuit Court did not refuse to entertain the appeal nor did the Circuit Court refuse to decide the case on the appeal nor hold or decide that the Circuit Court had no jurisdiction to hear or decide the same, as required by the proofs or by the law. On the contrary, the Circuit Court did entertain the appeal,

did hear the counsel of the parties fully on all the questions raised in the case, and did decide the same. But in making such decision the said court did hold and decide that the matter in controversy was within the jurisdiction of the consul, under the treaty, and that the consul, in the exercise of that jurisdiction, after hearing the parties, had decided the matter. Pursuant to those views the Circuit Court, as the return shows, did thereupon direct that the decree of the District Court be reversed, and that the libel of the petitioners be dismissed.

Power to issue writs of mandamus to any courts appointed under the authority of the United States was given to this court by the thirteenth section of the Judiciary Act, in cases warranted by the principles and usages of law.* When passed, the section also empowered the court to issue such writs, subject to the same conditions, to persons holding office under the United States, but this court, very early, decided that the latter provision was unconstitutional and void, as it assumed to enlarge the original jurisdiction of the court, which is defined by the Constitution.†

Applications for a mandamus to a subordinate court are warranted by the principles and usages of law in cases where the subordinate court, having jurisdiction of a case, refuses to hear and decide the controversy, or where such a court, having heard the cause, refuses to render judgment or enter a decree in the case, but the principles and usages of law do not warrant the use of the writ to re-examine a judgment or decree of a subordinate court in any case, nor will the writ be issued to direct what judgment or decree such a court shall render in any pending case, nor will the writ be issued in any case if the party aggrieved may have a remedy by writ of error or appeal, as the only office of the writ when issued to a subordinate court is to direct the performance of a ministerial act or to command the court to act in a case where the court has jurisdiction and refuses to act, but the

* 1 Stat. at Large, 81.
† Marbury v. Madison, 1 Cranch, 175; Ex parte Hoyt, 13 Peters, 290.

supervisory court will never prescribe what the decision of
the subordinate court shall be, nor will the supervisory court
interfere in any way to control the judgment or discretion
of the subordinate court in disposing of the controversy.* ·
Where a rule is laid, as in this case, on the judge of a sub-
ordinate court, he is ordered to show cause why the peremp-
tory writ of mandamus shall not issue to him, commanding
him to do some act which it is alleged he has power to do,
and which it is his duty to do, and which he has improp-
erly neglected and refused to do, as required by law. Due
service of the rule being made the judge is required to make
return to the charge contained in the rule, which he may do
by denying the matters charged or by setting up new matter
as an answer to the accusations of the relator, or he may
elect to submit a motion to quash the rule or to demur to
the accusative allegations. Matters charged in the rule and
denied by the respondent must be proved by the relator, and
matters alleged in avoidance of the charge made, if denied
by the relator, must be proved by the respondent.† Motions
to quash in such cases are addressed to the discretion of the
court, but if the respondent demurs to the rule, or if the
relator demurs to the return, the party demurring admits
everything in the rule or the return, as the case may be,
which is well pleaded, and if the relator elects to proceed to
hearing on the return, without pleading to the same in any
way, the matters alleged in the return must be taken to be
true to the same extent as if the relator had demurred to the
return.‡ Subordinate judicial tribunals, when the writ is

---

* Insurance Co. v. Wilson, 8 Peters, 302; United States v. Peters, 5
Cranch, 135; Ex parte Bradstreet, 7 Peters, 648; Ex parte Many, 14 How-
ard, 24; United States v. Lawrence, 3 Dallas, 42; Commissioner v. Whitely,
4 Wallace, 522; Insurance Co. v. Adams, 9 Peters, 602.

† Angell & Ames on Corporations, 9th ed., § 727; Cagger v. Supervisors, 2
Abbott's Practice, N. S. 78.

‡ Tapping on Mandamus, 347; Moses on Mandamus, 210; Com. Bank
v. Commissioners, 10 Wendell, 25; Ryan v. Russell, 1 Abbott's Practice, N.
S. 230; Hanahan v. Board of Police, 26 New York, 316; Middleton v. Com-
missioners, 37 Pennsylvania State, 245; 3 Stephens's Nisi Prius, 2326; 6
Bacon's Abridgment, ed. 1856, 447.

addressed to them, are usually required to exercise some judicial function which it is alleged they have improperly neglected or refused to exercise, or to render judgment in some case when otherwise there would be a failure of justice from a delay or refusal to act, and the return must either deny the facts stated in the rule or alternative writ on which the claim of the relator is founded, or must state other facts sufficient in law to defeat the claim of the relator, and no doubt is entertained that both of those defences may be set up in the same return, as in the case before the court.* Several defences may be set up in the same return, and if any one of them be sufficient the return will be upheld.†

Evidently the District judge was inclined to adopt the proposition, advanced by the libellants, that the suit for wages, as it was prosecuted by a libel *in rem*, was not within the treaty stipulation, nor a controversy within the jurisdiction of the consul, but he did not place his decision upon that ground. He did, however, rule that the treaty did not have the effect to change the jurisdiction of the courts, except to require them to decline to hear matters in difference between the masters and crews of vessels in all cases where the consul had acted or perhaps was ready to act as judge or arbitrator in respect to such differences. Beyond doubt he assumed that to be the true construction of the treaty, and having settled that matter he proceeded to inquire whether the consul had adjudicated the pending controversy, or whether the evidence showed that he was ready to do so, and having answered those inquiries in the negative he then proceeded to examine the pleadings and proofs, and came to the conclusion in the case which is expressed in the decree from which the appeal was taken to the Circuit Court.

All of those matters were again fully argued in the Circuit Court, and the Circuit judge decided to reverse the decree of the District Court upon the following grounds: (1.) That

---

* Springfield *v.* Harnden, 10 Pickering, 59; People *v.* Commissioners, 11 Howard's Practice, 89; People v. Champion, 16 Johnson, 61.

† Wright *v.* Fawcett, 4 Burrow, 2041; Moses on Mandamus, 214.

the Prussian consul, under the treaty, had jurisdiction of the subject-matter involved in the suit in the District Court. (2.) That the jurisdiction of the consul under the treaty was exclusive. (3.) That the proofs showed that the consul heard and adjudicated the matter involved in the suit appealed to the Circuit Court, and that the libellants were bound by that adjudication.

Such questions were undoubtedly raised in the pleadings, and it is equally certain that they were decided by the District Court in favor of the libellants. Raised as they were by the pleadings, it cannot be successfully denied that the same questions were also presented in the Circuit Court, and in view of the return it must be conceded that they were decided in the latter court in favor of the respondent. Support to that proposition is also found in the opinion of the Circuit judge, and in the order which he made in the case. Suffice it, however, to say, it so appears in the return before the court, and this court is of the opinion that the return, in the existing state of the proceedings, is conclusive.

Confessedly the petitioners are without remedy by appeal or writ of error, as the sum or value in controversy is less than the amount required to give that right, and it is insisted that they ought on that account to have the remedy sought by their petition. Mandamus will not lie, it is true, where the party may have an appeal or writ of error, but it is equally true that it will not lie in many other cases where the party is without remedy by appeal or writ of error. Such remedies are not given save in patent and revenue cases, except when the sum or value exceeds two thousand dollars, but the writ of mandamus will not lie in any case to a subordinate court unless it appears that the court of which complaint is made refused to act in respect to a matter within the jurisdiction of the court and where it is the duty of the court to act in the premises.

Admiralty courts, it is said, will not take jurisdiction in such a case except where it is manifestly necessary to do so to prevent a failure of justice, but the better opinion is that, independent of treaty stipulation, there is no constitutional

or legal impediment to the exercise of jurisdiction in such a case. Such courts may, if they see fit, take jurisdiction in such a case, but they will not do so as a general rule without the consent of the representative of the country to which the vessel belongs, where it is practicable that the representative should be consulted. His consent, however, is not a condition of jurisdiction, but is regarded as a material fact to aid the court in determining the question of discretion, whether jurisdiction in the case ought or ought not to be exercised.*

Superior tribunals may by mandamus command an inferior court to perform a legal duty where there is no other remedy, and the rule applies to judicial as well as to ministerial acts, but it does not apply at all to a judicial act to correct an error, as where the act has been erroneously performed. If the duty is unperformed and it be judicial in its character the mandate will be to the judge directing him to exercise his judicial discretion or judgment, without any direction as to the manner in which it shall be done, or if it be ministerial, the mandamus will direct the specific act to be performed.†

Power is given to this court by the Judiciary Act, under a writ of error, or appeal, to affirm or reverse the judgment or decree of the Circuit Court, and in certain cases to render such judgment or decree as the Circuit Court should have rendered or passed, but no such power is given under a writ of mandamus, nor is it competent for the superior tribunal, under such a writ, to re-examine the judgment or decree of the subordinate court. Such a writ cannot perform the functions of an appeal or writ of error, as the superior court will not, in any case, direct the judge of the subordinate court what judgment or decree to enter in the case, as the writ does not vest in the superior court any power to give

---

* 2 Parsons on Shipping, 224; Lynch v. Crowder, 2 Law Reporter, N. S. 355; Thomson v. Nanny, Bee, 217; The Bee, Ware, 332; Tne Infanta, Abbot's Admiralty, 263.

† Carpenter v. Bristol, 21 Pickering, 258; Angell & Ames on Corporations, 9th ed., § 720.

any such direction or to interfere in any manner with the judicial discretion and judgment of the subordinate court.*

Viewed in the light of the return, the court is of the opinion that the rule must be discharged and the

PETITION DENIED.

---

* Ex parte Crane, 5 Peters, 194; Ex parte Bradstreet, 7 Id. 634; Insurance Co. v. Wilson, 8 Id. 304; Ex parte Many, 14 Howard, 25.