214 PEOPLE ex rel. SCHUMACHER v. MARINE COURT.

First Department, December Term, 1875.

---

THE PEOPLE ex rel. HERMAN A. SCHUMACHER, Consul-General of the German Empire, Appellant, v. THE MARINE COURT OF THE CITY OF NEW YORK and ALBERT WEISE, Respondents.

*Treaty of 1871 between United States and German empire — jurisdiction of consuls under.*

Under the treaty of 1871, between the United States and the German empire, the courts of this State have no jurisdiction over an assault and battery committed by the mate of a German vessel upon a sailor thereof, both being German citizens, on board of such vessel while lying in the port of New York, unless it is of such a character as to disturb the peace and public order.

Appeal from an order at Special Term, denying an application for a writ of prohibition.

*Salomon & Burke,* for the appellant.

*Robert W. Andrews,* for the respondent.

PEOPLE ex rel. SCHUMACHER v. MARINE COURT. 215

First Department, December Term, 1875.

BRADY, J. :

On the 16th of February, 1875, Albert Weise, a sailor and member of the crew of the German barque "Philip Weyergang," then lying in the port of New York, by service of a summons, commenced an action in the Marine Court of the city of New York against William Junker, chief mate of said barque, to recover damages for an alleged assault and battery committed on board of said barque on the 6th of February, 1875. Upon an affidavit setting forth this alleged cause of action, the plaintiff obtained an order of arrest, by virtue of which the defendant was arrested. The plaintiff and the defendant were both citizens of the German empire, and members of the crew of said barque, which was a merchant vessel belonging to the empire. After such arrest the master of the vessel, as well as the defendant, the mate thereof, applied to the relator, the consul-general of the German empire at the city of New York, complaining of the arrest, and requesting him to take cognizance of the matter under the treaty between the United States and Germany. The relator thereupon, through counsel, applied to the justice of the Marine Court who had granted the order of arrest to have the same vacated, which was done, and thereupon, on notice to the plaintiff's attorneys, further applied at the Special Term of the Marine Court for an order dismissing the suit for want of jurisdiction under said treaty of December 11, 1871. This motion was denied.

The relator then applied to this court for a writ of prohibition to be directed to the Marine Court and to Albert Weise, his guardian ad litem, Dominick Healy, and his attorneys, commanding them to desist and refrain from any further proceeding in the action mentioned. The application was denied, and from the order made thereon the relator appeals. The treaty between the United States and the German empire of December 11, 1871, by article 13, provides as follows: "Consuls-general, consuls, vice-consuls or consular agents, shall have exclusive charge of the internal order of the merchant vessels of their nation, and shall have exclusive powers to take cognizance of, and determine differences of every kind which may arise, either at sea or port, between the captains, officers and crew, and especially in reference to wages and the execution of mutual contracts. Neither any court or authority shall, on

*any pretext*, interfere in these differences except in cases where the differences on board ship are of a nature to disturb the peace and public order in port or on shore, or when persons other than officers and crew of the vessel are parties to the disturbance."

The exclusive cognizance relates to " differences of every kind " and no " court or authority shall on any pretext interfere in these differences, except in câses where the differences are of a nature to disturb the peace and public order in port or on shore." These provisions clearly cover the case which was commenced in the Marine Court, and deprived that tribunal of jurisdiction. The clause which admits of interferences by court or authority in cases where the differences are of such a nature as to disturb the peace and public order, demonstrate that differences of a violent character were in the contemplation of the high contracting parties, and were to be interfered with only when likely to disturb the public peace, and for the purpose of preventing such an occurrence. Hence if a quarrel arose between two of the crew, and it resulted in blows, unless it were so marked and with its attending circumstances so calculated to disturb the public peace as to demand interference, it would not be within the exception mentioned, giving cognizance to the power of the local authorities to intervene. This being the effect of the treaty it becomes, under the Constitution of the United States (art. 6), the supreme law of the land. For the purpose of preserving the peace, which no government would surrender the right to do, the local courts may exercise their power, but beyond that there is nothing reserved. It is not necessary perhaps to show that this result is in perfect harmony with the rule of international law, which declares that a vessel in a foreign port, for the general purpose of governing and regulating the rights and duties of those aboard, is to be considered as a part of the territory of the nation to which she belongs (Halleck, 172, § 26), because when we determine that the difference which forms the gravamen of the complaint, is one of which the persons named in the treaty shall have exclusive cognizance, the conclusion is inevitable that our courts have no jurisdiction, and cannot proceed against the objection taken to its attempted exercise. (*Ex parte Newman*, 14 Wall., 152; *Peterson* v. *Brockelman*, Marine Court, General Term, reported in pamphlet, opinion by Ch. J. SHEA; Constitution U. S., article 6; Halleck

International Law, 194, § 19; *Nosberg* v. *Hillgren,* 5 N. Y. Legal Observer, 177.) In discussing this subject Halleck says: It therefore follows that with respect to facts happening on board which do not concern the tranquillity of the port or persons foreign to the crew, or acts committed on board while such vessel was on the high seas, they are not amenable to the territorial justice. All such matters are justiceable only by the courts of the country to which the vessel belongs. So firmly is this doctrine incorporated into the practice of nations, that the French regard it as a positive rule of international law, and the French laws do not hesitate to prescribe that when crimes are committed on board a French vessel, in a foreign port, by one of the crew against another of the same crew, the French consul is to resist the application of the local authority to the case. (Halleck, *supra,* p. 173, § 26, and citations.)

The German empire, in reference to matters which form the subject of civil actions in legal contemplation, has secured, by treaty, the recognition of this doctrine of France, and it is, as we have seen, in accord with the proposition that a private vessel, in merchant service, is, by the rules of international law, regarded as still within, or of the territory of the country to which she belongs; or, in other words, is viewed as a part of the country whose flag she bears. It is not necessary to pursue the subject further, however.

The supreme law of the land having vested jurisdiction exclusively in certain persons named in the treaty, it is clear that the Marine Court did not possess it, and that the prohibition sought should have been accomplished by the necessary process.

The order made at Special Term must, for these reasons, be reversed.

DAVIS, P. J., and DANIELS, J., concurred.

Order reversed.