## EX PARTE RAILWAY COMPANY.

1. This court will not by *mandamus* revise the action of inferior courts acting within the scope of their authority touching any matter about which they must exercise their judicial discretion.
2. A petition was presented for a *mandamus* to the Circuit Court of the United States for the District of Colorado in the matter of the proceedings had subsequently to its receipt of the mandate ordered in *Railway Company* v. *Alling*, 99 U. S. 463. They are mentioned *infra*, pp. 715–717. *Held*, that the case is not one which calls for interposition by *mandamus*.

PETITION for *mandamus*.

The facts are stated in the opinion of the court.

The case was argued by *Mr. Roscoe Conkling* and *Mr. Samuel Shellabarger* for the petitioner, and by *Mr. Sidney Bartlett* and *Mr. George O. Shattuck, contra.*

MR. JUSTICE HARLAN delivered the opinion of the court.

This is an application, by petition, for a writ of *mandamus* to the judges of the Circuit Court of the United States for the District of Colorado, commanding them to proceed and give final decree, in accordance with the opinion and mandate of this court, in the suit of the Cañon City and San Juan Railroad Company against the Denver and Rio Grande Railway Company. The history of this litigation is set forth in *Railway Company* v. *Alling* (99 U. S. 463), to which reference is here made. The present application is supported by an exemplified copy of the proceedings had in the Circuit Court at its May

Term, 1879, after the filing therein of the opinion and mandate of this court.

The main contention of the Denver and Rio Grande Railway Company was that the court below had failed and refused to comply with the mandate of this court; that, upon filing the mandate, that company became entitled absolutely, and beyond the discretion of the Circuit Court, to a decree restoring it, at once and unconditionally, to the possession of the Grand Cañon of the Arkansas River; dissolving the injunction granted against it in that suit; adjudging that it had the prior right to occupy and use that cañon for the purpose of constructing its railroad therein; and requiring the Cañon City and San Juan Railway Company, its officers, agents, servants, and employés, to refrain from interfering with or obstructing the Denver and Rio Grande Company in such occupancy and use of the cañon, or in the construction of its railroad in and through the same.

It is essential to a proper understanding of the present application to recall some of the leading facts in this litigation. The controversy between these two companies arose out of their respective claims to occupy and use the Grand or Big Cañon of the Arkansas River for railroad purposes. The Circuit Court, upon the original hearing, held the prior right and location to be with the Cañon City Company, with liberty, however, to the Denver Company to exhibit its bill in any court of competent jurisdiction to compel the former company to so locate and construct its road as to permit the convenient and proper location by the Denver Company of its road, or, if two roads could not be conveniently constructed and operated in the cañon, to occupy the track and roadway of the Cañon City Company. While the causes were under submission in this court at its last term, it was represented that, after the rendition of the decree in favor of the Cañon City Company, the parties and corporations concerned had entered into binding agreements, whereby the Atchison, Topeka, and Santa Fé Railroad Company, in its own right, and in connection with the Pueblo and Arkansas Valley Railroad Company (the successor of the Cañon City Company), had become and was equitably the owner of all the property, rights, and interests of the Den-

ver Company, and entitled to the control of its affairs, business, and suits of every kind. Upon that ground, the Pueblo Company moved that the submission be set aside, and the appeals dismissed, while the Atchison Company moved that it have permission to intervene in this court, and, by its solicitor, consent to such dismissal.

These motions were denied, for the reasons given in the former opinion. It was there said, that if the directors of the Denver Company, in prosecuting the appeals to final judgment, violated any trust committed to their hands, or any agreement which was binding upon the corporation and the minority stockholders, remedy might be sought "in some court of original jurisdiction, into which, upon proper pleadings, all persons interested may be summoned." The court also said: "If, since those decrees were entered, the Atchison, Topeka, and Santa Fé Railroad Company, or the Pueblo and Arkansas Valley Railroad Company have, by valid contracts, acquired a controlling interest in the property, rights, and affairs of the Denver Company, that interest can be asserted by appropriate proceedings, and will not be affected by any thing we may determine upon the issues presented by these appeals."

Upon the merits of the cases it was held —

That the intention of Congress by the act of 1872 was to grant to the Denver Company a present beneficial easement in the particular way over which its designated routes lay, capable, however, of enjoyment only when the way granted was actually located, and, in good faith, appropriated for the purposes contemplated by the company's charter and the act of Congress;

That when such location and appropriation were made, the title, which was previously imperfect, acquired precision, and by relation took effect as of the date of the grant;

That the Denver Company, by its occupancy of the Grand Cañon on 19th April, 1878, for the purpose of constructing its road through that defile, came then, if not before, into the enjoyment of the present beneficial easement conferred by the act of Congress of June 8, 1872, and was entitled to have secured, against all intruders whatever, the privileges or advantages which belonged to that position;

That such right was, however, subject to the provisions of the act of March 3, 1875, whereby it was declared, in the interest of the public, that any other railroad company, duly organized, might use and occupy the cañon for the purposes of its road, in common with the road first located.

The opinion concluded as follows: —

"It results from what we have said, that the court below erred in enjoining the Denver Company from proceeding with the construction of its road in the Grand Cañon. The decree, as entered, can only be sustained upon the assumption that the Cañon City Company had by prior occupancy acquired a right superior to any which the Denver and Rio Grande Railway Company had to use the cañon for the purpose of constructing its road. But that assumption, we have seen, is not sustained by the evidence, and is inconsistent with the rights given by the acts of Congress to the Denver Company. The Denver Company should have been allowed to proceed with the construction of its road unobstructed by the other company. Where the Grand Cañon is broad enough to enable both companies to proceed without interference with each other in the construction of their respective roads, they should be allowed to do so. But in the narrow portions of the defile, where this course is impracticable, the court, by proper orders, should recognize the prior right of the Denver and Rio Grande Railway Company to construct its road. Further, if in any portion of the Grand Cañon it is impracticable or impossible to lay down more than one road-bed and track, the court, while recognizing the prior right of the Denver Company to construct and operate that tract for its own business, should, by proper orders, and upon such terms as may be just and equitable, establish and secure the right of the Cañon City Company, conferred by the act of March 3, 1875, to use the same road-bed and track, after completion, in common with the Denver Company.

"The decrees in these causes are, therefore, reversed, with directions to set aside the order granting an injunction against the Denver and Rio Grande Railway Company, and also the order dissolving the injunction granted in its favor, and dismissing its bill. By proper orders, entered in each suit, the

court below will recognize the prior right of that company to occupy and use the Grand Cañon for the purpose of constructing its road therein, and will enjoin the Cañon City and San Juan Railway Company, its officers, agents, servants, and employés, from interfering with or obstructing that company in such occupancy, use, and construction. It may be that, during the pendency of these causes in the court below, or since the rendition of the decrees appealed from, the Cañon City and San Juan Railway Company has, under the authority of the Circuit Court, constructed its road-bed and track in the Grand Cañon, or in some portion thereof. In that event, the cost thus incurred in those portions of the cañon which admit of only one road-bed and track for railroad purposes, may be ascertained and provided for in such manner and upon such terms and conditions as the equities of the parties may require.

"The court will make such further orders as may be necessary to give effect to this opinion."

It appears from the transcript of the proceedings had in the court below, after the return of the causes, that the Pueblo and Arkansas Valley Railroad Company was permitted, against the objection of the Denver Company, to file supplemental bills, showing that it was the successor of the Cañon City Company, and setting out in detail, among other things, the same facts substantially that were relied upon in this court in support of the motions made at the last term to set aside the submission and dismiss the appeals. The prayer of the first supplemental bill was that those facts might be considered, and that upon the hearing the original decrees might be permitted to stand without modification or change.

An order was entered in the Circuit Court, on the 14th of July, 1879, in which, after reciting the mandate of this court, and the reversal of the original decree of July, 1878, it was declared that the said decree theretofore given and allowed "be vacated and set aside," with costs to the Denver Company to the date of the filing of the mandate.

It was also adjudged that the right of the Denver Company "to first locate and construct its railway upon the way mentioned and described in the bill of complaint herein, as against the Cañon City and San Juan Railway Company and the Pueblo

and Arkansas Valley Railroad Company, and as of the date of the commencement of this suit, and the date of said decree, is recognized and established."

The decree proceeds: —

"Forasmuch, however, as it is alleged by the said plaintiff [the Cañon City and San Juan Railway Company], in certain supplemental bills by it filed herein, that since the said decree the said defendant [the Denver and Rio Grande Railway Company] hath granted, sold, or otherwise yielded to the said plaintiff its right of way in the premises; and forasmuch as it is also alleged by the said plaintiff that since the said decree the said plaintiff hath built wholly or in part upon the said way, and upon the line heretofore located by the said defendant, a railway of such gauge and structure as the said defendant hath proposed to build, for which, as to the whole or some part thereof, the said defendant ought in equity and good conscience to pay the reasonable value, and because the value of said railway is at present unknown to the court, no further decree touching the ultimate right of the parties can be given or allowed until the court shall be better advised in the matters aforesaid.

"And it is considered by the court that the relations of the parties of and concerning the line of railway heretofore constructed, or now in process of construction as aforesaid, ought not to suffer any change pending such inquiry touching the facts upon which the further and final judgment and decree of the court will be given; therefore, let each of the parties be enjoined and restrained from doing any act or thing towards building and completing the said line of railway until the further order of the court. Nor shall either of the said parties interfere with the present possession of the other in the said line of railway, but each shall remain in the possession of that part which it now holds until the further order of the court. And of this order the parties shall take notice without writ or further service. But if either of the said parties shall desire to construct another line of railway on the same right of way, without interfering with the grade or road-bed constructed by the said plaintiff or the Cañon City and San Juan Railway Company, it shall be at liberty to do so."

The order then provided for the appointment of three engineers, — one to be nominated by each of the parties, and one to be selected by the court, — who were required to ascertain and report to the court to what extent, in the construction of two roads from Cañon City to the twentieth mile post, must the two companies occupy the same track; whether the Grand Cañon of the Arkansas was broad enough to enable both companies to proceed without interference with each other in their respective roads, or if one be already constructed, then whether such constructed line will interfere with or render impracticable the construction of a second line; whether in the narrow portions of the cañon there is any place where such a course was impracticable, and if so, whether any road-bed or railroad has been constructed in such place or places, and the cost and reasonable value of same; whether, if two roads shall be built on the Arkansas River from Cañon City to the twentieth mile post, to what extent should they be located on opposite sides of the river, and the relative cost thereof; what has been done by the Cañon City Company or the Pueblo and Arkansas Valley Railroad Company towards constructing a railroad from Cañon City to the twentieth mile post, and what is its value and its location, with reference to the Arkansas, its defiles and cañons, and what part of the line so constructed is on the public domain, what part on lands owned by individuals or corporations, and what is the value of each part separately.

Upon a subsequent day of the same term the Denver Company, by petition, suggested that the decree rendered was not full and complete, and that the court had not awarded all the relief to which it was entitled under the opinion and mandate of this court. The Circuit Court, however, held that further and final decree should be deferred until the matters set forth in the decree of July 14, 1879, were determined.

Thus stood the case, in its essential features, when the petition for *mandamus* was filed in this court. Subsequently, the attention of the court was called to the final decree rendered in the Circuit Court in January, 1880.

After a careful consideration of all that has been said in support of the present application, we are of opinion that a *mandamus* should be denied. Our former opinion discloses the fact

that many matters growing out of this litigation were necessarily left undisposed of, and were remitted to the Circuit Court for such determination as the rights and equities of the parties required under the circumstances existing at the time its action was invoked. We took care to say that nothing determined upon the issues presented upon the original appeals would affect the question as to whether the Atchison, Topeka, and Santa Fé Railroad Company, or the Pueblo and Arkansas Valley Railroad Company, had, subsequently to the decree of July, 1878, become, by valid contract, the owner of the property, or entitled to the control of the rights, affairs, and suits of the Denver Company. That question, in distinct terms, was left open for subsequent adjudication, in a court of original jurisdiction, upon proper pleadings and by appropriate proceedings. We expressly limited our decision to a determination of the rights of the parties as they existed when the decrees of July, 1878, were rendered, and as manifested in the records then before us. Whether, therefore, the supplemental bills, filed upon the return of the causes, raised, in proper form, the question as to the right of the Atchison, Topeka, and Santa Fé Railroad Company, or the Pueblo and Arkansas Valley Railroad Company, under the alleged contracts made with the Denver Company subsequently to the decrees of July, 1878, to control the pending suits so far as they affected the interests of the latter company, — whether the Denver Company, in consequence of said alleged contracts, had lost or waived the right, improperly denied to it by the decree of July, 1878, of occupying the Grand Cañon for the purpose of constructing its road, — were matters about which the Circuit Court was at liberty, and was bound to exercise its judicial discretion.

It is contended that the Circuit Court plainly disobeyed our mandate when declining to make such orders as would place the Denver Company, upon the filing of the mandate, in the actual occupancy or possession of the Grand Cañon, without reference to, or without awaiting the determination of, the claim which the Cañon City Company, or its successor, had on account of money expended in the construction of its road in the Grand Cañon, or in that portion of it which admitted of but one roadbed or track. It is true that we said — referring necessarily to

the rights of parties as they existed at the date of the decree of July, 1878 — that the Circuit Court erred in enjoining the Denver Company from constructing its. road in the Grand Cañon; and that that company should have been allowed to proceed without obstruction from or interference by the latter. company. We, therefore, directed, among other things, that the order granting the injunction should be set aside, and that, by proper orders, the prior right, of the Denver Company to occupy and use the cañon be recognized. These directions were substantially complied with. The prior right of the Denver Company to locate and construct its railway in the cañon was expressly recognized and established by the order of July 14, 1879. It is true that the injunction was not, in terms, dissolved, but the final decree of July, 1878, upon which its efficacy depended, was expressly vacated and set aside. The injunction necessarily fell with the decree. The foundation upon which it rested was destroyed when the decree was annulled. Had our directions gone no farther than to dissolve the injunction against, and to recognize the prior right of, the Denver Company, the present application would rest upon stronger grounds than it does. We could not, however, ignore the fact that, possibly, during the pendency of these causes in the court below, or subsequently to the decree of July, 1878, the Cañon City Company, or its successor, had, under the authority or sanction of the court, expended money in the construction of its roadbed and track in some portions of the Grand Cañon. "In that event," we said, "the cost thus incurred in those portions of the cañon which admit of only one road-bed and track for railroad purposes may be ascertained and provided for in such manner and upon such terms and conditions as the equities of the parties may require." We gave no direction as to the mode in which such cost should be ascertained, or as to the terms and conditions to be imposed in any provision made for it. Those matters were left for the determination of the court below, according to the principles of equity.

It was undoubtedly competent for that court, in the exercise of its judicial discretion, to have put the Denver Company, upon the filing of the mandate, into immediate possession of the Grand Cañon, including the road-bed and track which the Cañon City

Company had constructed in the narrow portions of that defile. But the propriety of orders to that effect would have depended upon the equities of the parties as they existed at the time the action of the court, in that direction, was sought. It was not in violation of our mandate that the Circuit Court, after setting aside and vacating the decree of July, 1878, and recognizing the prior right of the Denver Company, should suspend further action as to the ultimate rights of the parties until the matters set out in the supplemental bill, and recited in · the decree of July 14, 1879, were inquired into.

We recognize, in its fullest extent, the power of this court, by *mandamus*, to enforce prompt compliance with its mandates; but it is not consistent with the principles and usages of law that we should, in that summary mode, revise the action of inferior courts, as to any matters about which they must or may exercise judicial discretion. "The writ has never been extended so far, nor ever used to control the discretion and judgment of an inferior court of record acting within the scope of its judicial authority." *Ex parte Taylor*, 14 How. 3; *Ex parte Many*, id. 24; *United States* v. *Lawrence*, 3 Dall. 42; *Life and Fire Insurance Company of New York* v. *Wilson's Heirs*, 8 Pet. 291; *Ex parte Hoyt*, 13 id. 279; *Ex parte Myra Clarke Whitney*, id. 404; *Ex parte Newman*, 14 Wall. ·152. The remedy for any errors committed by the Circuit Court, either in the decree of July 14, 1879, or in the final decree of January, 1880, is by appeal to this court. We therefore forbear, at this time, any expression of opinion as to the existence or non-existence of errors in those decrees to the prejudice of either party. We decide nothing more, upon the present application, than that this is not a case which, in our judgment, calls for interposition by a writ of *mandamus*.

One of the reasons assigned in oral argument why the application for *mandamus* should be favorably considered, is that by the act of Congress of March 3, 1877, amending the act of June 2, 1872, the time within which the Denver and Rio Grande Railroad Company must complete its road as far south as Santa Fé, will expire on June 2, 1882; in default whereof, it will forfeit, as to the unfinished portion of the road, the rights and privileges granted by the act of 1872. The time limited, it is

urged, will expire before an appeal from the final decree of Jan. 2, 1880, can be reached upon the docket of this court in the usual course of its business.

We recognize the force of this suggestion, and feel it to be our duty, under the circumstances, to afford the parties an opportunity to secure an early and final determination of their respective rights in the premises. To that end, upon an appeal being perfected, and upon the filing in this court of a transcript of the record, we will hear a motion to advance this cause for consideration at the present term.

*Mandamus denied.*

MR. JUSTICE SWAYNE, MR. JUSTICE FIELD, and MR. JUSTICE BRADLEY dissented.

MR. JUSTICE FIELD. I dissent from the order of the court denying the *mandamus* prayed. When the Circuit Court dissolved the injunction restraining the Denver Company from taking possession of the Grand Cañon, there was only a seeming compliance with our mandate, for soon afterwards the court restored the injunction, thus practically defeating our judgment. But as the court has decided to advance the hearing of the appeal from the final decree entered in the court below, on application of the appellants, I will refrain from further comment until that appeal is heard.