**CATHERALL v. CUNARD S. S. CO., Limited.**

United States District Court
S. D. New York.
Nov. 26, 1951.

232

Silas B. Axtell, New York City, for plaintiff, Arnold W. Knauth, New York City, of counsel.

Lord, Day & Lord, New York City, for defendant, William J. Brennan, John W. Castles, III, New York City, of counsel.

IRVING R. KAUFMAN, District Judge.

The plaintiff, a crew member aboard the Queen Elizabeth, brings suit for injuries sustained while descending a conveyor belt from the ship to dockside in New York. He alleges that a convulsive movement of the belt tripped him and caused severe injuries to his leg. There are two causes of action, the first under the Jones Act, 46 U.S.C.A. § 688, charging defendant with negligence, the second for maintenance and cure. The action is civil in nature and is brought on the law side of the court. There is no attempt to invoke the court's admiralty jurisdiction. Defendant now moves to dismiss on grounds that the court has no jurisdiction over the matter.

■ The objection to the court's jurisdiction of the Jones Act cause of action is well taken. Plaintiff is a foreign national who signed aboard a foreign ship in a foreign country for a voyage beginning and ending in a foreign port. Even if the injury occurs in United States waters, under these circumstances plaintiff is allowed no recovery. The Court of Appeals for this Circuit has repeatedly affirmed this holding. The Paula, 2 Cir. 1937, 91 F.2d 1001; O'Neill v. Cunard White Star Ltd., 2 Cir. 1947, 160 F.2d 446; Taylor v. Atlantic Maritime Co., 2 Cir. 1950, 179 F.2d 597. Those cases in which a foreign seaman *has* been allowed access to the Jones Act are not in point. Gambera v. Bergoty, 2 Cir. 1942, 132 F.2d 414, concerned a long-time resident alien of the United States serving on a ship in United States intercoastal traffic. Kyriakos v. Goulandris, 2 Cir. 1945, 151 F.2d 132, was the case of a seaman who signed aboard a foreign vessel, in the United States, for a voyage beginning and ending in the United States.

■ Plaintiff argues that The Paula is an archaic doctrine, with no particular relevance to the intricacies of modern admiralty affairs. Taylor v. Atlantic Maritime Co., supra, should properly dispel this notion, reiterating in 1950 the Court of Appeals adherance to the earlier case. Alternatively, plaintiff suggests that the case at bar may properly be distinguished from The Paula. The Queen Elizabeth, he says, is not truly a foreign vessel in the sense that a merchantman, under foreign registry, ranging over many seas, is a foreign vessel. The Queen, he urges, was built expressly for the Southampton-New York run. The only other port it touches, and that only briefly, is Cherbourg. She stops in New York as long as in Southampton, takes on as many supplies in this country as in Europe, is in effect a British-American ship and as such equally responsible under our laws. The theory is novel but unconvincing. The Cunard Steamship Company is concededly a British corporation. The Queen Elizabeth operates under the British flag; surely it is one of Britain's prides. The law of the flag traditionally has governed all that concerns the "internal economy" of the ship. Exceptions have been carved out in the case of an American seaman serving aboard a vessel in foreign registry, owned by an American citizen, Gerradin v. United Fruit Co., 2 Cir. 1932, 60 F.2d 927, or in specific instances where the voyage of a foreign ship began and ended in United States waters. See Gambera v. Bergoty, supra, and Kyriakos v. Goulandris, supra. But there is no suggestion that the benefits of the Act be extended to seamen, signed on in foreign ports, to foreign owned, operated, registered ships simply because those ships are partial

to American ports. Judge Learned Hand concedes the cogency of the argument that the Jones Act should apply to all seamen, American and foreign, but he would not extend the reach of the statute without express Congressional mandate.[1] In the case at bar, The Paula and sequent cases dictate that the law of the flag should not yield.

There remains the cause of action for maintenance and cure. The matter might quickly be disposed of by stating that the action is one between aliens, filed at law, without authority of any statute of the United States, therefore not maintainable in this court. Title 28 U.S.C.A., Section 1332. See City of Indianapolis v. Chase National Bank, 1941, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47; Kavourgias v. Nicholaou Co., 9 Cir. 1945, 148 F.2d 96. The disposition, I fear, would be superficial. In denying civil jurisdiction, it ignores the admiralty jurisdiction of the court. It also evades a nascent jurisdictional problem in this circuit, already grown more robust elsewhere.

▆▆▆▆ The original grant of admiralty jurisdiction to the federal courts was enunciated in Article III, Section 2, of the Constitution which states, in part, "The judicial Power shall extend * * * to all Cases of admiralty and maritime Jurisdiction". The power of the district courts was set out in the Judiciary Act of 1789 and thereafter in the Judicial Code. Title 28, U.S.C.A. § 1333, states: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

"(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

The ancient maritime right to maintenance and cure was thus secured to the seaman in our courts. The Osceola, 1903, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760. He may pursue his remedy in admiralty or, under the "saving to suitors" clause, at law;

but the procedures are exclusive. In admiralty the cause is heard without jury, before the court. The Sarah, 1823, 21 U.S. 391, 8 Wheat. 391, 5 L.Ed. 644. The subject-matter itself, a right springing from the general maritime law, is sufficient to vest the court with jurisdiction. Calmar Steamship Corp. v. Taylor, 1938, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993. At law, his action is more circumscribed; he is entitled to a jury trial, but the court must have jurisdiction over the parties and subject-matter before he is permitted entry. The "saving to suitors" clause authorizes the prosecution at law of actions cognizable in admiralty, if there was a recognized common-law remedy, but only where the jurisdictional requisites of diversity and amount are met. Chelentis v. Luckenbach S. S. Co., 1917, 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171. Title 28, Section 1332. In the instant case, no diversity exists between the parties within the purview of Section 1331, and standing alone, since it is brought at law, the cause of action for maintenance and cure must necessarily fall, as has its companion cause, the action under the Jones Act.

We thus avoid a problem which may yet churn the placid waters of Jones Act litigation in this circuit. Perhaps too casually, we have allowed causes for maintenance and cure and causes under the Jones Act to be tried jointly at law without sufficient probe into the court's jurisdiction of the separate causes. Now elsewhere, this practice has been sharply challenged. The propriety of combining the actions, at law, where no diversity exists has been denied in several nearby circuits. The rationale of pendent jurisdiction[2] justifying merger of the actions has been expressly rejected. Jordine v. Walling, 3 Cir. 1950, 185 F.2d 662. One District Judge bravely confesses error and intimates that his brethren are partners in the error. McDonald v. Cape Cod Trawling Corp., D.C.Mass.1947, 71 F. Supp. 888.[3] If he is correct, I cannot say

1. Taylor v. Atlantic Maritime Co., 2 Cir.1950, 179 F.2d 597, 600.

2. Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148.

3. But cf. Jansson v. Swedish American Line, 1 Cir.1950, 185 F.2d 212 where

it is suggested that only the jurisdictional amount, not diversity, need be met, since the action is one brought under the Constitution, pursuant to Title 28 U.S.C.A. § 1331. This thesis is also rejected in Jordine v. Walling, supra.

234

that others of us have not erred. If the case at bar involved two New York residents, the normal procedure in this court certainly would be to try both causes before a jury. In the past, we have not questioned this. Yet in the Third Circuit this is error. Possibly in the First Circuit it also is. For the moment, we must tread on unsure ground.

██ Assuming the incorrectness of a trial, at law, of maintenance and cure, the cause could undoubtedly be brought on the admiralty side of the court. The district courts may take jurisdiction in admiralty of maritime controversies between foreigners. Ex Parte Newman, 1871, 81 U.S. 152, 14 Wall. 152, 20 L.Ed. 877. But the power is clearly a discretionary one and the district judge may entertain or dismiss it in the exercise of that discretion. Canada Malting Co. v. Paterson Steamship, 1932, 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837 (see discussion by Justice Brandeis and cases cited therein.) The court will not ordinarily take cognizance of the case if justice would be as well done by remitting the parties to their home forum. Langnes v. Green, 1931, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520.

██ In the exercise of its discretion the Court could direct the transfer of the maintenance and cure cause of action herein to the admiralty side of the docket. I do not see any advantage in this. Apparently the plaintiff has adequate relief available under the laws of Great Britain. Our laws for the protection of seamen do not appear notably advanced over their English counterparts. The Court should not decline jurisdiction without ascertaining that a more appropriate forum offering adequate remedy is available, Varvvovsos v. Pezas, D.C.S.D.N.Y. 1941, 41 F.Supp. 318, but I am satisfied that such relief is available in England. Though not denying this court's admiralty jurisdiction over the maintenance and cure, in the exercise of the Court's discretionary powers, I shall decline jurisdiction.

The motion to dismiss will be granted as to both causes of action.

Settle order.