213 So.2d 208

**William HENDRIX et al d/b/a Hendrix Tractor and Implement Company**

v.

**FRISCO BUILDERS, INC.**

**William HENDRIX and Zelma Hendrix d/b/a Hendrix Tractor and Implement Company**

v.

**FRISCO SPORTSWEAR, INC.**
**1 Div. 406, 406–A.**

Supreme Court of Alabama.

May 23, 1968.

Rehearing Denied Aug. 22, 1968.

Hugh M. Caffey, Jr., Brewton, for appellant.

John M. Coxwell, Monroeville, for appellees.

PER CURIAM.

This appeal involves two suits filed in the circuit court of Monroe County which were consolidated by agreement for trial. The plaintiff in one of the suits was Frisco Builders, Inc., and the plaintiff in the other suit was Frisco Sportswear, Inc. The joint defendants in each suit were appellant and Harold Hendrix, d/b/a Hendrix Gas Company. The Gas Company suit was not appealed. The record does not show the disposition of the suit against the Gas Company.

There was a close family relationship in the two ownerships, but the business enterprises were separate and distinct with no financial interest of one in the other. The businesses became separate and distinct in September, 1961.

The jury returned separate verdicts in favor of each plaintiff, awarding stipulated damages against the Tractor Company. The Tractor Company here contends inter alia that it was entitled to its requested affirmative charge which the trial court refused.

The pivotal issue in the trial was whether or not certain employees were in the employment of the Gas Company or the Tractor Company when the alleged damages (agreed upon) were sustained. We will now advert to the nature of the suit and the evidence which, so far as pertinent issues on this appeal are concerned, is largely undisputed as we view the record.

It seems that the Sportswear Company was having trouble with its manufacturing process due to inadequacy of gas pressure on January 24, 1963, which was an extremely cold day. The plant was served with butane gas from a tank that was not functioning properly. The defendant Gas Company was serving the plant with butane gas, and on that day undertook to install or set up another surface tank on the premises owned by the Frisco Builders and occupied by the Sportswear Company. Both suffered damages when the gas in the tank being installed caught fire. There is no contention here but that the employees who did the installing or setting up the tank were guilty of negligence that proximately caused the stipulated damages. The pertinent issue in the trial court, and on this appeal, is whether the employees who transported the tank to the premises and undertook to set it up for use there were, in such work, the employees of the Gas Company or the Tractor Company.

We have closely examined the evidence, having reviewed it in full more than one time. We conclude therefrom that the employees at this particular installation were the employees of the Gas Company who were "borrowed" from the Tractor Company.

The three men (Holder, Manning and Gibbs) who transported and attempted to install or set up the tank were, at the time, in the general employment and on the payroll of the Tractor Company. We might note here that the Gas Company and the Tractor Company, and their employees,

were housed in the same building for convenience, but there was no mutuality of employment among them. The bookkeepers sometimes reciprocated in helping each other. The Gas Company had its own employees, and so did the Tractor Company. When needed, the Gas Company employees attached butane equipment to tractors of the Tractor Company for which service the Gas Company would bill the Tractor Company. There was a family friendship that invited reciprocal service for pay when needed, and occasionally for accommodation.

In the instant case, Cecil Booth, acting manager for the Gas Company in the absence of the regular manager, and with full authority, importuned Ed Holder, with the assistance of Manning and Gibbs, all general employees of the Tractor Company at the time, to deliver and set up the tank on the premises of Frisco Builders, Inc., for use of Frisco Sportswear. The Gas Company paid them in cash for the service. The Tractor Company gave them permission to perform the service; that they were not busy that day. He further testified that on January 24, 1963, when they moved the tank, they operated under the instructions of Cecil Booth, acting manager of the Gas Company, and that he was accountable to him for his operations in moving the tank that day. He, also, testified that when the accident occurred he was working for Hendrix Gas Company, and was paid by the Gas Company for the service.

Cecil Booth, acting manager for the Gas Company, testified that he contacted Mr. Ed Holder for the Gas Company and asked him "if he would get one of the boys and go down to the plant and haul this tank around there and set it off for me." He also testified that the men, Ed Holder, Manning and Gibbs, were following his instructions, and that he paid them, that is, the Gas Company paid them. He further swore that the Tractor Company was not at all interested in the installation of the gas tank at Frisco Sportswear on January 24, 1963; that it had no interest in the Gas Company, nor did the Gas Company have any interest in the Tractor Company. He stated that the men, on the occasion of the fire, were working under his guidance and instruction; also, that the Tractor Company was not in the gas business.

Harold Hendrix, the owner of the Gas Company, testified that in September, 1961, he sold his interest in the Tractor Company to his brother, Bill Hendrix, and from that time on through the date of the fire, he operated the Gas Company, and his brother and mother owned and operated the Tractor Company. They were separate businesses and there was no joint venture. He further testified that he told Mr. Jones, Manager of Frisco Sportswear, Inc., that his insurance company "would do something about it immediately or we would try to get something done about it immediately." That he was referring to the Gas Company which was the only company he had; that they (the men doing the installation) "were considered my employees under the guidance of Cecil Booth at that time to do the work as long as they were doing my business."

The evidence, which we will not further delineate, impressed us as supporting the contention of appellant that the men who were moving the tank, were at the time in the employment of the Gas Company. Nowhere in the record do we find that the Tractor Company had any interest whatsoever in the Gas Company, or the Gas Company in the Tractor Company. The mere fact that the owners were closely related and sometimes extended each other accommodation in rendering service, does not alter the fact that in the instant case the employees were serving the Gas Company, at its instance and at its expense. The fact that the motor vehicle used to transport the tank was the property of the Tractor Company does not, in our judgment, fasten the Tractor Company with any duty with respect to the service being rendered by the three men in question.

The fact that Ed Holder and the other two employees who performed the service here under consideration were paid by their general employer does not, under the circumstances in question, prevent their being employees of the Gas Company in performing the particular task here involved. Martin v. Anniston Foundry Company, 259 Ala. 633, 68 So.2d 323(5).

The question proposed by the record in this case is one of agency. Williams v. Central of Georgia Ry. Co., 220 Ala. 298, 124 So. 878. In that case we observed:

"* * * To make use of the language of Circuit Justice Taft * * * in Byrne v. Kansas City, etc., R. R. Co. (C.C.A.) 6 Cir., 61 F. 605, 607, 24 L.R.A. 693, the result is determined by the answer to the further questions, whose work was the servant doing? and under whose control was he doing it? These questions were in that case answered, more at length, to be sure, but in substance by a quotation from Chief Justice Cockburn's judgment in Ronoke v. Colliery Co., 2 C.P.Div. 205, as follows: 'When one person lends his servant to another for a particular employment, the servant, for anything done in that employment, must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him.' * * *"

See, also, United States Steel Corp. v. Mathews, 261 Ala. 120, 73 So.2d 239, where we cited the *Williams* case, supra, with approval; and, also, said that it is the reserved right of control rather than its actual exercise that furnishes the true test of relationship. Tuscaloosa Veneer Company v. Martin, 233 Ala. 567, 172 So. 608; Moore-Handley Hardware Company v. Williams, 238 Ala. 189, 189 So. 757. He is master who has the supreme choice, control and direction of the servant and whose will the servant represents in the ultimate result and in all its details. Birmingham Post Co. v. Sturgeon, 227 Ala. 162, 149 So. 74. See, also, Alabama Power Company v.

Smith, 273 Ala. 509, 142 So.2d 228(8–10), where like pronouncements were made, and an observation as follows:

"An employee may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that the employee becomes the servant of such third person with all the legal consequences of the new relation. Whether one who is usually the servant of one master has become specially and temporarily the servant of another is ordinarily a question of fact. If, under the circumstances only one inference can be properly drawn, the court will determine the issue, but if reasonable men may fairly come to different conclusions respecting the inference to be drawn from the facts, the case will be one for the jury. United States Steel Corp. v. Mathews, 261 Ala. 120, 73 So.2d 239."

Ed Holder and the other two employees were transferred with their own consent and acquiescence to the Gas Company and became its servants with all the legal consequences of the new relation. Under the evidence we conclude that only one inference could be properly drawn and the issue was for the court to determine and not the jury.

We hold that the trial court committed reversible error in refusing to give appellant's written charge 1 as follows:

"The Court charges the jury that you cannot return a verdict in favor of the plaintiff and against the defendant William H. Hendrix and Zelma Hendrix, d/b/a Hendrix Tractor and Implement Company."

For failure to give the aforequoted instruction to the jury, each judgment of the trial court is reversed and remanded.

The foregoing opinion was prepared by B. W. Simmons, Supernumerary Circuit

Judge, and was adopted by the court as its opinion.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, COLEMAN and KOHN, JJ., concur.