Lionel W. Noonan appeals from the summary judgment granted in favor of East-West Beltline, Inc., which holds that East-West Beltline, Inc., (hereinafter "East-West") is entitled to a $24,184.21 refund of recording taxes.
The uncontested facts are as follows:
East-West was the owner of all of the outstanding capital stock of the Bel Air Corporation.[1] On March 15, 1984, Bel Air entered into two separate financing transactions with AmSouth Bank, N.A. ("AmSouth"). The first financing transaction ("revolver loan") entered into on this date was an amendment to an existing revolving credit agreement which, among other things, increased the loan from AmSouth to Bel Air and required an amendment to an existing mortgage from Bel Air to AmSouth ("amended revolver mortgage"). At the time of the recording of the amended revolver mortgage the amount of indebtedness was $6,999,400.00. The judge of probate collected a mortgage privilege tax in *Page 238 
the amount of $10,499.10 in accordance with Ala. Code (1975), §40-22-2.
Prior to issuing the revolver loan, AmSouth required that East-West guarantee the indebtedness of Bel Air to AmSouth secured by the amended revolver mortgage and that East-West mortgage some of its property as additional security for such indebtedness. In accordance with these requirements, an amendment to the mortgage from East-West to AmSouth ("amended revolver additional security mortgage") was recorded immediately after the recording of the amended revolver mortgage. The property covered by the amended revolver additional security mortgage was additional security for the indebtedness of Bel Air secured by the amended revolver mortgage, for which an additional $10,499.10 in taxes was paid. Such payment was duly noted by the judge of probate as being paid under protest.
The second financing transaction ("term loan") was a term loan which provided for a loan from AmSouth to Bel Air and required a mortgage on certain property owned by Bel Air ("term loan mortgage"). At the time of the recording of the term loan mortgage, the amount of indebtedness with respect thereto was $4,050,000.00, and the judge of probate collected a mortgage privilege tax in the amount of $6,005.00. The payment of such mortgage privilege tax was in accordance with Ala. Code (1975), § 40-22-2.
In order to consummate the term loan, AmSouth required East-West to guarantee the indebtedness of Bel Air to AmSouth secured by the term loan mortgage and required that East-West mortgage some of its property to AmSouth as additional security for such indebtedness of Bel Air to AmSouth. In accordance with the requirement of AmSouth, a mortgage from East-West to AmSouth ("term loan additional security mortgage") was recorded immediately after the recording of the term loan mortgage. The property covered by the term loan additional security mortgage was additional security for the indebtedness of Bel Air secured by the term loan mortgage, upon which indebtedness the mortgage recording privilege tax of $6,005.00 had already been paid.
At the time of presentation for recording of the term loan additional security mortgage, the judge of probate demanded that an additional mortgage privilege recording tax be paid. In order to obtain the recording of the term loan additional security mortgage, East-West paid an additional mortgage privilege recording tax in the amount of $6,075.00. The additional tax was paid under protest, and that fact was duly noted on the receipt for the tax by an agent of the judge of probate.
In addition to the transactions described above, AmSouth made advances under the amended revolver loan during the period September 1, 1983, through September 1, 1984, for which no mortgage recording privilege tax had previously been paid. As required by statute, AmSouth reported these additional advances, and forwarded its payment of $15,220.22 for mortgage recording privilege tax on those advances. That payment was allocated one-half to the amended revolver mortgage and one-half to the amended revolver additional security mortgage; the $7,610.11 allocable to the amended revolver additional security mortgage was paid under protest.
The amount, the terms of payment, and the interest rate of the secured indebtedness were established by the amended revolver mortgage and the term loan mortgage, and were not changed by the additional security mortgages.
East-West argues that the payment of additional mortgage privilege taxes was erroneously required by the judge of probate, because, it says, the two additional security mortgages given by East-West fall within the exemption of Ala. Code (1975), § 40-22-2 (4). That section provides:
 "(4) The privilege taxes herein imposed shall not be required on or for the filing of any such instrument, providing additional or substitute security for any indebtedness secured by, or the securing of which is evidenced by, an instrument previously filed, upon the filing of which *Page 239 
the taxes provided by law have been paid or which was filed at a time when no such privilege taxes were required by law; provided, that the secured indebtedness remains unchanged in amount and in time of maturity."
Noonan, as judge of probate, determined that in order to fall under the exemption set out in § 40-22-2 (4) the parties to the transaction must be identical. Since the mortgagor of the additional security mortgages (East-West) was different from the mortgagor of the previously recorded instruments (Bel Air), Noonan required payment of taxes by East-West. Noonan argues that the statute is vague and ambiguous, and, therefore, that the Court should look to legislative intent and administrative opinions for an interpretation.
East-West asserts that there is no room for construction, because, it says, the statute is clear and unambiguous.
 "The general rule is that where the language of a statute is unambiguous, the clearly expressed intent must be given effect, and there is no room for construction." Alabama Industrial Bank v. State ex rel. Avinger, 286 Ala. 59, 62, 237 So.2d 108, 111 (1970); see also Tate v. Teague, 431 So.2d 1222 (Ala. 1983).
We find as a matter of law that the statute is not ambiguous and is, therefore, not subject to judicial interpretation but must have its plain meaning enforced.
The plain meaning of § 40-22-2 (4) is that no privilege tax is required with regard to an instrument if three criteria are met: (a) the instrument provides additional or substitute security for an indebtedness, (b) the indebtedness is secured by another instrument previously filed, and filing taxes provided by law have been paid on that previously filed instrument, and (c) the secured indebtedness remains unchanged in amount and in time of maturity.
It is uncontroverted that the additional security mortgages given by East-West met each of these criteria, and the trial court so found.
To construe the statute in such a way as to support Noonan's interpretation the final provision would have to be amended to read "provided, that the secured indebtedness remains unchanged in amount and in time of maturity, and the identity of the party offering the security remains unchanged." Such an amendment can only be made by the legislature. It is not proper for a court to read into the statute something which the legislature did not include although it could have easily done so. Phenix City v. Alabama Power Co., 251 Ala. 403,37 So.2d 515 (1948).
Noonan never alleged in the trial court proceedings that the statute was ambiguous. Instead, he argued that the interpretation of the statute should be controlled by administrative interpretations of the statute evidenced by opinions and interoffice memoranda of the Attorney General of the State of Alabama. It is true that when construing a statute a court should give great weight to an administrative interpretation of long standing; however, the statute need be construed only where its meaning is doubtful. Cherokee Countyv. Cunningham, 260 Ala. 1, 68 So.2d 507 (1953).
Since we find the statute to be plain and unambiguous and not subject to construction, the judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, BEATTY and HOUSTON, JJ., concur.
[1] After this case was submitted to the trial court, Bel Air Corporation was merged with East-West Beltline, Inc., and the resulting corporation is named Bel Air Corporation. No motion for substitution of parties has been made. In order to avoid confusion, the original names of the parties, as they existed at the time the suit was filed, will be used in this opinion. *Page 240