The plaintiffs, United States Fidelity Guaranty Company ("USF G") and J.T. Schrimsher Company, Inc., sued Russo Corporation, Ronald McLelland, individually and as agent for Russo, and Holley Equipment Company.[1] The complaint alleged that McLelland was the agent, servant, and employee of Russo and that McLelland's negligent and/or wanton operation of a crane at a construction project should be imputed to Russo. The complaint also alleged that Holley negligently and/or wantonly failed to install a safety limiting device after removing it and that as a proximate result of Holley's negligence and/or wantonness, a crane owned by Schrimsher was extensively damaged.[2]
Russo moved for a summary judgment, contending that McLelland was the borrowed servant of Schrimsher and therefore that Schrimsher was liable for the damages attributable to any negligence of McLelland. Holley also moved for a summary judgment, based on the "borrowed servant" doctrine and also based on the allegation that McLelland was contributorily negligent in operating the crane. The trial court entered summary judgments for Russo and Holley and made the judgments final pursuant to Rule 54(b), Ala.R.Civ.P. USF G and Schrimsher appeal.
The evidence, viewed in the light most favorable to Schrimsher and USF G, the nonmoving parties, as required by our applicable standard of review, suggests the following facts: Schrimsher was the general contractor for the Aerospace and Shared Classroom Building constructed on the Auburn University campus in 1989. Russo was a subcontractor on the project, hired to prepare the drilled shaft foundation work on the job site. McLelland, an experienced heavy equipment operator, was employed by Russo to operate the drill rig and a crane, which was contractually provided by Schrimsher for Russo's use on the job site. While working on the drilled shaft foundation for Russo, McLelland operated the crane on approximately 25 occasions.
When Russo completed the drilled foundation work, sometime around September 22, 1989, all of its personnel left the job site, except for McLelland. Mike Medley, job superintendent for Schrimsher, had asked McLelland to stay on to operate the crane for Schrimsher; and because drilled shaft foundation work was slow, and as an accommodation to Schrimsher, Russo consented to McLelland's staying on with Schrimsher to operate the crane. However, because McLelland was a union member and *Page 488 
Schrimsher was a nonunion contractor, Schrimsher could not hire McLelland directly. Consequently, Russo and Schrimsher agreed that Russo would pay McLelland and that Schrimsher would reimburse Russo accordingly.
Each morning while McLelland was operating the crane for Schrimsher, he reported to two of Schrimsher's employees who directed his activities. Also during this time, after McLelland recorded the time he operated the crane, he had representatives from Schrimsher sign his time book and then he delivered the time book to Russo so Russo could pay him.
Russo retained the right to remove McLelland from the job site at any time and to place him on another job site of its choice if such an occasion arose; it retained the right to terminate his employment; it provided him with workers' compensation insurance coverage and health insurance coverage; and it withheld state and federal income taxes from his paycheck.
On November 7, 1989, McLelland left the crane unattended for almost 20 minutes, during which time the crane boom rose to a vertical position, fell over backwards, and damaged the crane itself, an office work trailer, and an automobile. The crane boom was supposed to have installed on it a safety device, which would cut everything off whenever the boom got to a pre-set angle near to vertical. This device, however, had been off the crane during the entire time that McLelland had operated it — during the time he operated it for Russo and during the time he operated it for Schrimsher; McLelland had been aware, since the very first time he operated the crane, of the absence of that device. McLelland knew that the safety device was designed to prevent the kind of accident that occurred, and he believed that federal law required the crane to have such a device installed on it. Although McLelland maintains that he told his supervisor at Schrimsher and its mechanic about the lack of the safety device on this crane several times before the accident, the mechanic and the supervisor both stated in their affidavits that they had no conversations with McLelland or anyone else concerning the absence of the safety device.
 SUMMARY JUDGMENT FOR RUSSO
A corporation can act only through its servants, agents, or employees; but the acts of those servants, agents, or employees are not the acts of the corporation unless the servants, agents, or employees are acting for the corporation — unless their acts are done in or about the duties assigned them or are accomplished within the line and scope of their duties. See, Martin v. Anniston Foundry Co., 259 Ala. 633,68 So.2d 323 (1953). However, one in the general employ of one master may with respect to particular work be transferred to the service of a third person in such a way that he becomes for the time being the servant of that person, with all the legal consequences of that relationship:
 "In cases of this nature, consideration must be given to the character of the service to be rendered, the duration of employment, and the one who is paying the employee. These considerations, however, are merely aids in determining the relation and do not necessarily determine the relationship. They are to be applied only in those cases where the evidence does not clearly establish who is the employer. The true criterion is the exercise of power to control the employee at the time of the commission of the act."
Martin v. Anniston Foundry Co., 259 Ala. at 637,68 So.2d at 327.
 " 'An employee may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that the employee becomes the servant of such third person with all the legal consequences of the new relation. Whether one who is usually the servant of one master has become specially and temporarily the servant of another is ordinarily a question of fact. If, under the circumstances only one inference can be properly drawn, the court will determine the issue, but, if reasonable men may fairly come to different conclusions respecting the inference to be *Page 489 
drawn from the facts, the case will be one for the jury.' "
Hendrix v. Frisco Builders, Inc., 282 Ala. 473, 476,213 So.2d 208, 211 (1968) (quoting Alabama Power Co. v. Smith, 273 Ala. 509, 142 So.2d 228 (1962)).
The ultimate test in determining whether an employee has become a loaned servant is a determination of whose work the employee was doing and under whose control he was doing it. See Coleman v. Steel City Crane Rentals, Inc., 475 So.2d 498
(Ala. 1985), cert. denied, Illinois Central Gulf R.R. Co. v.Coleman, 476 U.S. 1104, 106 S.Ct. 1946, 90 L.Ed.2d 356 (1986). It is the reserved right of control, rather than the actual exercise of control, that furnishes the true test of the relationship. Id. "Power to control determines responsibility."Martin v. Anniston Foundry Co., 259 Ala. at 637,68 So.2d at 328.
Under the particular facts of this case, if Schrimsher had had employees with the ability to operate the crane, it would not have had to secure the services of McLelland from Russo. In securing McLelland's services, Schrimsher assumed control of McLelland and directed him to perform certain acts with the crane. Therefore, Schrimsher was, for the time being, in complete charge of McLelland. Furthermore, McLelland was transferred to Schrimsher with his own consent and with Russo's consent, and he became Schrimsher's servant with all the legal consequences of the new relation. See Hendrix v.Frisco Builders, supra. The fact that McLelland was paid by Russo does not, under the circumstances in question, prevent his being an employee of Schrimsher in performing the particular task involved. Id.; Martin v. Anniston Foundry Co., supra.
Based on the foregoing, we conclude that, because only one inference could be properly drawn from the evidence, the trial court properly entered a judgment for Russo.
 SUMMARY JUDGMENT FOR HOLLEY
Holley, in its motion for summary judgment, did not dispute the contention that it failed to replace or install the safety device when it made repairs in February 1989. Rather, in its motion Holley basically relied on Russo's arguments that McLelland was the borrowed servant of Schrimsher, as a matter of law, and therefore, argued that McLelland's knowledge of the missing safety device was imputed to Schrimsher so as to relieve Holley of any liability. Holley also maintains that McLelland was contributorily negligent, that his contributory negligence was imputed to Schrimsher because he was its borrowed servant, and that that negligence bars any recovery.
Schrimsher and USF G maintain that even if McLelland was in fact the borrowed servant of Schrimsher (and we have determined he was), a fact question exists as to whether "knowledge of, at best, a temporary employee can be imputed to [Schrimsher] as a matter of law."
One of the legal consequences of the relation of master and servant is that the negligence of the servant, committed in the line and scope of his employment, is imputed to the master. See Towry v. Moore, 281 Ala. 644, 206 So.2d 889 (1968). It does not matter that the negligent servant is a borrowed servant and merely in the temporary employ of another. Rather, as long as the relation of master and servant exists, the master may be liable to third persons because of the negligent acts of its borrowed servant. See Coleman v. Steel City CraneRentals, Inc., supra; Martin v. Anniston Foundry Co., supra;Hendrix v. Frisco Builders, Inc., supra. The general rule is that if the master is injured by the negligence of the third person and by the concurring negligence of its own servant or agent, the servant or agent's negligence is imputed to his master and will defeat the master's action against the third person. See, 57 Am.Jur.2d Negligence § 1786, pp. 468-70 (1970).
Although it is disputed whether McLelland reported the absence of the safety device to anyone at Schrimsher, it is undisputed that he knew for at least six weeks before the accident occurred that the boom kick-out safety device was not installed on the crane; knew that the purpose of the safety device was to prevent just the kind of accident that occurred; and knew that a federal regulation required that a safety device *Page 490 
be installed. Nonetheless, after considering all those factors, we conclude, based on the authority of Johnson v.Niagara Machine Tool Works, 555 So.2d 88 (Ala. 1989), andCentral Alabama Elec. Co-op. v. Tapley, 546 So.2d 371 (Ala. 1989), that although McLelland may have been "heedless" of the danger presented by operating the crane without the safety device, his doing so does not rise to the level of contributory negligence as a matter of law.[3]
Based on the foregoing, the summary judgment for Holley is reversed and the case is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES and KENNEDY, JJ., concur.
[1] USF G had in full force and effect a policy of insurance with Schrimsher providing coverage for damage or loss to Schrimsher's equipment, under which USF G paid Schrimsher for its loss, an amount in excess of $189,000. USF G's claim is made by virtue of its equitable subrogation rights for the payment it made to Schrimsher and by virtue of an assignment executed in favor of USF G by Schrimsher.
[2] Holley serviced and repaired the crane before delivering it to the project site.
[3] Note: Although the author of this opinion dissented in Johnsonv. Niagara Machine Tool Works and in Central Alabama Elec.Co-op. v. Tapley, those cases state the existing law in Alabama.