The Alabama-Tennessee Natural Gas Company ("ATNG") sued the City of Huntsville and the Southern Natural Gas Company ("SNGC"), seeking a judgment declaring void a contract for natural gas transportation entered into between Huntsville and SNGC, or seeking to enjoin performance of that contract. ATNG based its complaint on the contention that the contract was subject to Alabama's competitive bid law, § 41-16-50 et seq., which had not been complied with. The trial court entered a summary judgment for the defendants; ATNG appealed. We affirm.
ATNG had transported or sold natural gas, without competition, to the cities of Huntsville and Decatur for over 40 years. It lost its business to a competitor, SNGC, when the Huntsville City Council accepted SNGC's proposal to provide natural gas transportation service upon the expiration of Huntsville's contract with ATNG.[1] ATNG's complaint raised the following issues, which ATNG again raises on appeal:
 "1. Whether the contract for gas transportation services should have been competitively bid pursuant to § 41-16-50 and § 41-16-54, Code of Alabama, or whether such services fall within the exemption for regulated utilities provided for by the Alabama Legislature in the Alabama competitive bid law, § 41-16-51(a).
 "2. Whether Huntsville's 20-year contract with the SNGC violates § 41-16-57(e), which provides: 'Contracts for the purchase of personal property or contractual services shall be let for periods not greater than three years.' "
A third issue raised by the complaint is not raised on appeal.
In May 1996, the City of Huntsville and SNGC filed motions for summary judgment. ATNG filed a cross motion for summary judgment. The trial judge heard oral argument and considered the pleadings; the documents filed in support of, and those filed in opposition to, the pleadings; and the briefs of the parties. The judge concluded that the contract between Huntsville and SNGC is exempt from the competitive bid law under the provisions of § 41-16-51(a), and it so held in its summary judgment.
The trial judge held correctly that the contract for gas transportation services was not required to be competitively bid, because service contracts of that nature fall within the exemption for contracts of regulated utilities provided for by the Alabama Legislature in § 41-16-51(a), a portion of the competitive bid law. Courts in other states have interpreted statutes similar to § 41-16-51(a) to exempt regulated utilities from competitive bid laws. See: County of Riverside v.Whitlock, 22 Cal.App.3d 863, 99 Cal.Rptr. 710, 719 (1972);Maffit v. City of Decatur, 322 Ill. 82, 152 N.E. 602 (1926);Telcom Systems, Inc. v. Lauderdale County Board of Supervisors,405 So.2d 119 (Miss. 1981). *Page 1346 
ATNG contends that the Huntsville-SNGC contract does not fall within the § 41-16-51(a) exemption, because, it argues, under the "plain meaning rule" of statutory construction the statutory requirement "fixed by law, regulation, or ordinance" is not met. ATNG points out that in 1985 the Federal Energy Regulatory Commission ("FERC") adopted Order No. 436[2] and it argues that as a result of this order the FERC now approves a range of rates, rather than a single tariff rate. ATNG argues that now, under the FERC, rates are "regulated, but not fixed" and thus cannot be held to be "fixed by . . . regulation," within the meaning of § 41-16-51(a). We reject this argument, because SNGC is a utility whose rates are regulated by the FERC under the authority of the Natural Gas Act, 15 U.S.C. § 717 et seq. The construction and operation of a second natural gas pipeline to Huntsville and the rates charged by the pipeline operator are strictly governed by FERC regulations. See18 C.F.R. § 284.7(d)(5)(ii).
We agree with the trial judge that the SNGC-Huntsville contract does not violate § 41-16-57(e), which prohibits the letting of certain competitively bid contracts for periods greater than three years. We reject ATNG's argument that the three-year limit in § 41-16-57(e) applies whether or not the contract is competitively bid; that three-year limit applies only to contracts that are competitively bid. This is the only construction consistent with custom and practice. ATNG itself entered into a contract of 20 years or longer with Huntsville to support its initial construction of a pipeline system in 1949. Apparently, no municipality or gas district in Alabama has ever put its natural gas service contracts out for bidding under the competitive bid law.
As a practical matter, a three-year limit on natural gas pipeline contracts would not be sound public policy, because no company would be willing to invest the capital required to lay a pipeline (in this case $53 million) without a long-term contractual commitment. The United States Supreme Court has recognized this fact, stating: "In the natural gas industry pipelines are very expensive; and to be justified they need long-term contracts for sale of the gas that will travel them."United States v. El Paso Natural Gas Co., 376 U.S. 651, 660,84 S.Ct. 1044, 1049, 12 L.Ed.2d 12 (1964).
Finally, we note that the state attorney general issued an opinion stating that this contract for natural gas transportation services is exempt from the competitive bid law.[3] The attorney general's opinion stated:
 "Natural gas transportation services, regulated by the Natural Gas Act, 15 U.S.C. § 717 et seq., are exempt from competitive bid pursuant to Code of Alabama 1975, § 41-16-51(a) and § 41-16-51(a)(13)."
While an opinion of the attorney general is not binding, it can constitute persuasive authority. Poe v. Grove Hill MemorialHospital Bd., 441 So.2d 861, 863 (Ala. 1983).
For the reasons stated above, the judgment of the trial court is due to be affirmed.
AFFIRMED.
HOOPER, C.J., and MADDOX, ALMON, and KENNEDY, JJ., concur.
BUTTS, J., recuses.*
[1] An analysis done by the Huntsville Utilities Gas System indicated that the building of an additional pipeline from Tuscaloosa to Huntsville, by which SNGC would transport the gas to Huntsville, would lead to a savings for the System of $7.6 million through the year 2005 and a savings of $31.6 million through the year 2017.
[2] 50 Fed.Reg. 42,408 (1985).
[3] Opinion dated December 13, 1995, from Attorney General Jeff Sessions.
* Attorney/firm in this case is also involved in sale/merger transaction with company in which spouse is director/stockholder.