BOLIN, Justice.
Jim Walter Resources, Inc. (hereinafter “JWR”), seeks a petition for a writ of mandamus directing the Tuscaloosa County Probate Court to record certain filings without the payment of a recording tax imposed pursuant to § 40-22-2, Ala.Code 1975.
Walter Energy, Inc., a publicly traded Alabama corporation, is the parent company of JWR. Walter Energy recently acquired Western Coal Corporation of Canada. As part of this multibillion-dollar acquisition, Walter Energy entered into a credit agreement with Morgan Stanley Senior Funding, Inc., and a consortium of lenders. As part of the credit agreement, Walter Energy’s subsidiaries were required to execute contingent guaranties of Walter Energy’s financing debt in the event of a default by Walter Energy. JWR secured its guaranty of Walter Energy’s financing debt by executing mortgages on its real and leasehold properties in Tuscaloosa County and Jefferson County. Also as part of the credit agreement, JWR, as a subsidiary of Walter Energy, was required to record the mortgages in the probate offices in the counties in which the properties were located.
JWR recorded the mortgages and related Uniform Commercial Code (“UCC”) financing statements in the Jefferson County Probate Court, Birmingham Division. With regard to the mortgage-recordation tax imposed by § 40-22-2, JWR provided the probate office with a letter dated June 7, 2011, from the Alabama Department of Revenue, which provided as follows:
“Please accept this letter as authorization from the Alabama Department of Revenue to record (i) that certain Mortgage, Security Agreement, Assignment of Leases, Rents and Profits, Financing Statement, Fixture Filing and As-Extracted Collateral Filing made by Jim *52 Walter Resources, Inc., as Mortgagor, to Morgan Stanley Senior Funding, Inc., as Collateral Agent, as Mortgagee, covering certain fee interests, (ii) that certain Mortgage,, Security Agreement, Assignment of Leases, Rents and Profits, Financing Statement, Fixture Filing and As-Extracted Collateral Filing made by Jim Walter Resources, Inc., as Mortgagor, to Morgan Stanley Senior Funding, Inc., as Collateral Agent, as Mortgagee, covering certain leasehold interests, and (iii) those certain related UCC financing statements listing Jim Walter Resources, Inc. as ‘Debtor’ and Morgan Stanley Senior Funding, Inc., as Collateral Agent, as ‘Secured Party’, without the payment of the mortgage recording tax which otherwise would be levied in accordance with Section 40-22-2 of the Code of Alabama.
“The mortgages and UCC financing statements are exempt from mortgage recording tax because they do not secure a stated or fixed amount of indebtedness, but rather secure only a contingent repayment obligation of the mortgagor as a guarantor under the terms of a guaranty agreement. Because it is uncertain if or when the mortgagor will be called on to pay the guaranteed obligations, no mortgage tax is due.”[1]
A similar letter was delivered to the Tuscaloosa County Probate Court. However, when JWR sought to record the mortgages and related UCC filings in Tuscaloosa, the Tuscaloosa County Probate Court refused to record the documents unless JWR paid the recordation tax under § 40-22-2.
JWR filed this petition for a writ of mandamus, arguing that it is entitled to mandamus relief because the Tuscaloosa County Probate Court has refused to perform a ministerial act as part of its administrative duties. We note that this Court has jurisdiction to review a petition for a writ of mandamus in matters as to which this Court has appellate jurisdiction. See § 12-3-11, Ala.Code 1975 (“Each of the courts of appeals shall have and exercise original jurisdiction in the issuance and determination of writs of quo warranto and mandamus in relation to matters in which said court has appellate jurisdiction.”). A probate court’s application of the mortgage-recordation-tax statute is within this Court’s jurisdiction because the circuit court’s appellate jurisdiction over probate matters is limited and does not include the taxing issue involved in this case. See § 12-22-21, Ala.Code 1975 (listing probate-court matters over which the circuit court has appellate jurisdiction); Oliver v. Shealey, 67 So.3d 73, 74 (Ala.2011)(holding that appeals from probate court are heard first by this Court if the subject matter is not proper for the appeal to be heard in circuit court and noting that “[a] circuit court’s appellate jurisdiction over an order of a probate court is confined to seven circumstances enumerated in § 12-22-21”).

Standard of Review

“ ‘A writ of mandamus is an extraordinary remedy, and it “will be issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.” ’ ”
*53 Ex parte Monsanto Co., 862 So.2d 695, 604 (Ala.2003) (quoting Ex parte Butts, 775 So.2d 178, 176 (Ala.2000), quoting in turn Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993)).
A writ of mandamus will lie to compel a court to perform ministerial duties. Tanner v. Dobbins, 251 Ala. 392, 395, 37 So.2d 520, 523 (1948).
“ ‘The rules of law applicable to the case are simple and well settled. The writ of mandamus will lie from a superi- or to an inferior or subordinate court, in a proper case, to compel it to hear and decide a controversy of which it has jurisdiction; or, where the cause has been heard, to compel such inferior court to render judgment or enter a decree in the given case. But its use is not warranted to direct what particular judgment shall be rendered in a pending cause, nor is it the proper function of such remedial writ to re-examine, or correct errors in any judgment or decree so rendered. “The rule applies to judicial as well as to ministerial acts, but it does not apply at all to a judicial act to correct an error, as where the act has been erroneously performed. If the duty is unperformed, and it be judicial in its character, the mandate will be to the judge directing him to exercise his judicial discretion or judgment, without any direction as to the manner in which it shall be done; or if it be ministerial, the mandamus will direct the specific act to be performed.” Ex parte Newman, [81] U.S. 152, 14 Wall. 152, 169, 20 L.Ed. 877 [ (1871)]; High on Extr. Rem. §§ 150-152, 266; Ex parte Schmidt, 62 Ala. 252 [ (1878) ]; Ex parte Mahone, 30 Ala. 49 [ (1857) ]. The principle, of course, universally prevails, that in no event will the writ ever be awarded where full and adequate relief can be had by appeal, writ of error, or otherwise.’ ” State v. Cobb, 288 Ala. 675, 678, 264 So.2d 523, 526 (1972) (quoting State v. Williams, 69 Ala. 311, 316 (1881)). In the present case, imposing the recordation tax on a mortgage recorded in a county is part of the administrative duties of the probate judge of the county and, as such, is a ministerial function.

Analysis

Section 40-22-2 provides, in pertinent part:
“No mortgage, deed of trust, contract of conditional sale, or other instrument of like character which is given to secure the payment of any debt which conveys any real or personal property situated within this state or any interest therein or any security agreement or financing statement provided for by the Uniform Commercial Code, except a security agreement or a financing statement relating solely to security interests in accounts, contract rights, or general intangibles, as such terms are defined in the Uniform Commercial Code, and except for the re-recordation of corrected mortgages, deeds, or instruments executed for the purpose of perfecting the title to real or personal property, specifically, but not limited to, corrections of maturity dates thereof, shall be received for record or for filing in the office of any probate judge of this state unless the following privilege or license taxes shall have been paid upon such instrument before the same shall be received for record or for filing....”
Section 40-22-2 imposes a tax on the privilege of recording an instrument “given to secure the payment of any debt.” Nothing in § 40-22-2 provides for a recor-dation tax when the instrument to be recorded secures a contingent guaranty rather than an existing “debt.” “ ‘A guaranty in its technical sense is collateral to, and *54 made independently of, the principal contract which is guaranteed; and the guarantor’s liability is secondary rather than primary or original.’ 38 C.J.S. Guaranty § 2 (1943).” Valley Mining Corp. v. Metro Bank, 383 So.2d 158, 162 (Ala.1980). In other words, the liability of the guarantor of the debt is secondary and comes into existence only upon default by the maker of the note or credit agreement. JWR’s liability is contingent upon Walter Energy’s default in paying pursuant to the credit agreement and does not constitute an existing debt of JWR’s. It is undisputed that the money may or may not become due under the contingent guaranty. Additionally, there is no fixed amount of “any debt” at this point because there has not been a default; therefore, there is no certain amount of indebtedness from which a recordation tax could be computed at the time the documents are presented for re-cordation. Accordingly, the contingent guaranty is not within the scope of § 40-22-2. In 1978, the attorney general issued an opinion, which we find persuasive, on whether mortgage-recordation taxes were due on an instrument given for the purpose of guaranteeing another person’s indebtedness:
“Reference is made to your letter of May 31, 1978, in which you request the opinion of this office as to whether mortgage privilege tax is due upon recordation of a mortgage from First Colony Farms, Inc., to John Hancock Mutual Life Insurance Company.
“From the facts stated in your letter it appears that John Hancock Mutual Life Insurance Company advanced funds to Tyson Carolina, Inc. to enable that corporation to purchase certain real property from First Colony Farms, Inc. To induce John Hancock to make these advances, First Colony guaranteed Tyson’s prompt repayment of 4.5 million dollars of Tyson’s indebtedness to John Hancock and gave a mortgage covering land in Bullock, Macon and Russell Counties to secure prompt performance under its guaranty. Code of Alabama 1975, § 40-22-2 levies a tax upon instruments ‘given to secure the payment of any debt.’ There is no provision contained in this section levying the tax upon an instrument given for the purpose of guaranteeing another person’s indebtedness. If the primary debtor, Tyson Carolina, Inc., properly pays its indebtedness to John Hancock then there will be no obligation on the part of First Colony to do anything. It is obvious that First Colony is merely underwriting Tyson’s debt.
“Under these circumstances it is my opinion that no mortgage [tax] should be collected and that the instrument should be received for record without payment of the tax levied under § 40-22-2, supra.”
Op. Att’y Gen. (June 23, 1978). We understand this opinion to be concerned with the same issue presented in this case, i.e., whether the giving of a mortgage to secure a contingent-guaranty obligation, rather than an actual existing debt, is subject to the tax imposed by § 40-22-2. Although under the facts in the attorney general’s opinion the company guaranteeing the indebtedness of another was unrelated to the debtor company, the rationale applied by the attorney general in that opinion is applicable in the present case. “While an opinion of the attorney general is not binding, it can constitute persuasive authority.” Alabama-Tennessee Natural Gas Co. v. Southern Natural Gas Co., 694 So.2d 1344, 1346 (Ala.1997).
The probate judge cites Noonan v. East-West Beltline, Inc., 487 So.2d 237 (Ala.1986), in support of his position that there is no statutory requirement under § 40-22-2 that the debt being secured be *55 the mortgagor’s debt. In Noonan, East-West Beltline, Inc., owned all the outstanding stock in Bel Air Corporation. Bel Air entered into two separate financing transactions with a bank. The first financing transaction involved a revolving-credit agreement. The revolving-credit agreement was an amendment to an existing mortgage between Bel Air and the bank, and, when the revolving-credit agreement was recorded, the probate judge collected the mortgage-recordation tax. Before issuing the revolving-credit agreement, the bank required East-West Beltline to guarantee the indebtedness of Bel Air to the bank secured by the revolving-credit agreement by mortgaging some of its property as additional security for Bel Air’s indebtedness. The probate judge required East-West Beltline to pay the mortgage-recordation tax when it recorded its additional-security mortgage, and East-West Beltline paid the tax under protest. The second financing transaction was for a term loan between Bel Air and the bank and required a mortgage on certain property owned by Bel Air. When the term loan was recorded, the probate judge collected the mortgage-recordation tax. Again, the bank required East-West Belt-line to provide additional security for the bank’s loan to Bel-Air, which East-West Beltline did. The probate judge required East-West Beltline to pay the mortgage-recordation tax when it recorded its additional-security mortgage for the term loan, and East-West Beltline again paid the tax under protest. The circuit court entered a summary judgment in favor of East-West Beltline, holding that East-West Beltline was entitled to a refund of the recordation taxes it had paid under protest.
In its summary-judgment motion, East-West Beltline had argued that the payment of the mortgage-recordation taxes on its two additional-security mortgages was in error because the two additional-security mortgages were exempt under § 40-22-2(4). Noonan. Subsection (4) provides that no recordation tax is required with regard to an instrument if (a) the instrument provides additional or substitute security for an indebtedness; (b) the indebtedness is secured by another instrument previously filed on which the filing taxes provided by law have been paid; and (c) the secured indebtedness remains unchanged in amount and in time of maturity. The probate judge in Noonan had argued that in order for a transaction to fall under the exemption set out § 40-22-2(4), the parties to the transaction must be identical. Because the mortgagor of the additional-security mortgages (East-West Beltline) was different from the mortgagor of the previously recorded instruments (Bel Air), the probate judge required payment of the recordation taxes by East-West Beltline. On appeal, the probate judge argued that § 40-22-2(4) was ambiguous. This Court affirmed the circuit court’s summary judgment, finding that the statute was unambiguous and did not require that the identity of the parties be the same.
Noonan is easily distinguishable from the present case. Noonan addressed whether a recordation tax was due with regard to an amendment providing additional security to a taxed mortgage that came within a specific exception to the mortgage-recordation statute. The Court in Noonan did not address whether a contingent, and as yet undetermined, liability constituted a “debt” subject to the recor-dation tax.
The probate judge cites Sustainable Forests, LLC v. Alabama Department of Revenue, 80 So.Bd 270 (Ala.Civ.App.2011), for the general proposition that recordation taxes are taxes imposed for the privilege of recording an' instrument, and he argues that, in the present case, JWR is *56 seeking to have the instruments recorded in the mortgage records and that the tax thus should apply here. Sustainable Forests involved § 40-22-1, which imposes a recordation tax on deeds and assignments. We agree that, like § 40-22-1, § 40-22-2 is a tax on the privilege of recording an instrument; however, the instrument being recorded must come within the language of the statute in order for the tax to apply.
Last, the probate judge argues that JWR has another adequate remedy — it can pay the tax under protest and seek a refund. Section 40-22-2 provides that the recordation tax is calculated at 15 cents per $100 of “indebtedness” being secured by the instrument being recorded. Here, JWR’s contingent guaranty becomes a “debt” only if and' when Walter Energy defaults on its obligations and then only to the extent of the default. Unless and until Walter Energy defaults, the debt secured by JWR’s instruments has no known amount. The probate judge suggests that he would calculate the recordation tax on JWR’s instruments on the fair market value of the property that is the subject of JWR’s mortgages. However, § 40-22-2 calculates the recordation tax based on a certain debt. Here, JWR’s debt is not yet certain, and the debt is not JWR’s but Walter Energy’s. Although the probate judge must determine the amount of the recordation tax owed, that amount must be based on a “debt,” which would be an ascertainable amount. Moreover, JWR had a letter from the Alabama Department of Revenue that provided that no recordation tax was due. For the purposes of determining whether mandamus relief is proper, we note that requiring JWR to pay a tax the Department of Revenue says is not owed only to then seek a refund from the Department of Revenue would not be another adequate remedy.

Conclusion

Here, JWR’s liability is contingent on the default of Walter Energy, as the signatory to the credit agreement, and JWR’s contingent guaranty does not constitute an unqualified promise to pay Walter Energy’s indebtedness under the credit agreement. In fact, JWR’s “debt” under the guaranty may or may not become due under the credit agreement. That being so, the contingent guaranty is not within the scope of § 40-22-2. Accordingly, we grant the petition and issue the writ. The probate judge of the Tuscaloosa County Probate Court is directed to record the filings at issue without the payment of the recording tax imposed by § 40-22-2, Ala. Code 1975.
PETITION GRANTED; WRIT ISSUED.
WOODALL, MURDOCK, MAIN, and WISE, JJ., concur.

. A similar letter was addressed to the Bessemer Division of the Jefferson County Probate Court.