Rel: April 11, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

————————————————

### SC-2023-0918

————————————————

**Teddy J. Faust, in his official capacity as Revenue Commissioner of Baldwin County**

**v.**

**Woods Properties and Investments, LLC**

**Appeal from Baldwin Circuit Court
(CV-20-900254)**

SHAW, Justice.

The defendant below, Teddy J. Faust, in his official capacity as the

Revenue Commissioner of Baldwin County, appeals from a summary

judgment entered by the Baldwin Circuit Court in favor of the plaintiff below, Woods Properties and Investments, LLC ("WPI"), in this action challenging the ad valorem tax classification of a condominium owned by WPI. For the reasons discussed below, we reverse and remand.

<u>Facts and Procedural History</u>

According to the underlying amended complaint in this case, in 2008 John Kevin Woods and Rebecca F. Woods, who are married, purchased unit 703 of Vista Bella Condominium ("the condominium") located in Orange Beach. According to WPI, John and Rebecca "occupied" the condominium from "time to time" immediately after the purchase. For purposes of ad valorem taxes, the condominium was classified as "Class III" property as defined in § 40-8-1, Ala. Code 1975.

In March 2017, John and Rebecca formed WPI, a Texas limited-liability company, "for estate planning purposes." They are the "sole members" and managers of WPI. WPI's "certificate of formation" states that its purpose "is to own real property and transact any or all lawful business." WPI's "company agreement" states that its purpose is to "own and manage rental real estate and to carry on any lawful business, purpose or activity."

2

Soon after WPI was formed, John and Rebecca conveyed the condominium to WPI. According to WPI, John and Rebecca "continued to use or occupy the unit from time-to-time." WPI's brief at 5. The amended complaint states that there was "no change in the property, or the use to which it [was] put," because John and Rebecca "continue[d] to use and occupy the unit."

For the tax year ending September 30, 2018, the condominium was reclassified for ad valorem tax purposes to "Class II" property under § 40-8-1. The reclassification resulted in a significant increase in the ad valorem taxes for the condominium. According to WPI, the condominium was reclassified on the "sole" basis that it was owned by a legal entity -- WPI -- and not by individuals. WPI paid the ad valorem taxes through the tax year ending September 30, 2022, under the new classification.

WPI filed a class-action complaint against Faust, in his official capacity as revenue commissioner, challenging the reclassification of the condominium and seeking declaratory and injunctive relief and a refund of allegedly erroneously paid ad valorem taxes. WPI alleged that the rationale used by Faust in changing the classification was that no property owned "by a legal entity of any kind can be classified as Class

3

III, notwithstanding the fact that the members, shareholders, or beneficiaries of the entity are effectively the owners of the property and that the property is nevertheless used as single family, owner-occupied, residential property." Upon a joint motion of the parties, the trial court "conditionally" certified a class.

Both parties moved for a summary judgment. The trial court issued a judgment granting WPI's summary-judgment motion and issuing a "final" class certification identifying the following as class members: "All entities that hold title to a single family residence situated in Baldwin County that has been assessed Class II, but not rented, for any tax year since two years preceding this action." The summary judgment was certified as final under Rule 54(b), Ala. R. Civ. P. Faust appeals.

## Standard of Review

"This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So. 2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So. 2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is

4

no genuine issue of material fact, the burden then shifts to the nonmovant to produce 'substantial evidence' as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So. 2d 794, 797-98 (Ala. 1989); Ala. Code 1975, § 12-21-12. '[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assur. Co. of Fla., 547 So. 2d 870, 871 (Ala. 1989)."

Dow v. Alabama Democratic Party, 897 So. 2d 1035, 1038-39 (Ala. 2004).

See also Price v. Alabama One Credit Union, 397 So. 3d 549, 553 (Ala. 2023).

Discussion

It appears that the determinative issue in this case is whether the condominium is either a "single-family owner-occupied residential property" for purposes of Art. XI, § 217(a), Ala. Const. 2022, or "residential property" for purposes of § 40-8-1. We hold that it is neither, and we reverse and remand.

For purposes of ad valorem taxation, § 217(a) divides taxable property that is not exempt by law into four classes. Only two are relevant here. Class II property is defined as "[a]ll property not otherwise classified." Class III property is defined, in pertinent part, as all "single-family owner-occupied residential property." Section 40-8-1, which also

5

governs the classification of property for ad valorem taxes, defines Class III property, as among other things, "residential property." § 40-8-1(a). That Code section further defines "residential property," in pertinent part, as "[r]eal property, used by the owner thereof exclusively as the owner's single-family dwelling." § 40-8-1(b)(6)a. The parties do not argue that the definitions of Class III property in § 217(a) and § 40-8-1(a) & (b)(6)a. are in conflict.[1]

The Court of Civil Appeals, "construing" § 217(a) and § 40-8-1(b)(6), has previously stated:

> "[T]here is little room for interpretation as to what type of property is included in Class III property. We conclude that § 40-8-1 and Art. XI, § 217(a), are unambiguous as written and require that residential property, in order to be classified as Class III property, must be being used by the owners as their dwelling at the time taxes are assessed."

---

[1]On appeal, WPI specifically states that it "does not contend that there is any practical distinction between" the definitions of Class III property in § 217(a) and § 40-8-1, although it suggests that, if there is a conflict, § 217(a) would control. WPI's brief at 15. We do not address whether § 40-8-1 is facially unconstitutional, because that issue has not been argued. See Ex parte St. Vincent's Hosp., 652 So. 2d 225, 228 (Ala. 1994) ("A constitutional issue can be reached by this Court only when it has been raised by a party at the trial level and the attorney general has been served pursuant to § 6-6-227[, Ala. Code 1975,] and Rule 44, [Ala.] R. App. P.").

Weinrib v. Wolter, 1 So. 3d 1032, 1035 (Ala. Civ. App. 2008).[2]

A "dwelling" is defined as "a shelter (as a house) in which people live." Merriam-Webster's Collegiate Dictionary 389 (11th ed. 2020). On appeal, Faust contends that WPI, as an "incorporeal legal entity," cannot occupy or use property as a "dwelling." In support of this argument, he cites, among other things, an opinion of the attorney general, Ala. Att'y Gen. Op. No. 2007-043 (Feb. 9, 2007), which addressed this question: "Whether single-family dwellings that are owned by family limited liability companies ('LLCs') or partnerships, but are never used for commercial purposes, should be classified as Class III property."

The opinion of the attorney general noted that the pertinent language of § 217(a) was similar to language in what is now Ala. Const. 2022, Art. X, § 205, which provides, in pertinent part, for a homestead exemption for a homestead and "the dwelling and appurtenances thereon owned and occupied by any resident of this state." (Emphasis added.)[3]

---

[2]Neither party disputes the correctness of the decision in Weinrib.

[3]The opinion of the attorney general noted that, although homestead exemptions and Class III property classifications are governed by different law and there is no requirement that Class III property be property that is subject to a homestead exemption, the language was "sufficiently similar."

7

The opinion of the attorney general discussed prior opinions that stated that a corporation is a legal entity separate from its stockholders and, "[b]eing an intangible entity, ... cannot be said to occupy property for the purposes of the homestead exemption." Further, the opinion of the attorney general stated, "a single-family residence that is owned by a limited liability company is not being occupied by the owner and used as the owner's single-family dwelling." Therefore, the opinion of the attorney general concluded, such property did not qualify for a homestead exemption. For similar reasons, the opinion of the attorney general concluded, "property owned by a partnership does not qualify for the homestead exemption."

As to § 217(a), the opinion of the attorney general stated:

"The plain language of section 217(a) imposes a two-part test to come within the definition of residential property for Class III purposes. Both an ownership test and a use test must be met. The property must be used exclusively as a single-family residence. In addition to use, however, the person using it as a single-family residence must be the owner.

"This plain reading of section 217(a) is reflected in its implementing statute, which is found at section 40-8-1 of the Code of Alabama."

8

Further, under the then-existing Alabama Limited Liability Company Act, § 10-12-1 et seq., Ala. Code 1975, which has since been replaced by the Alabama Limited Liability Company Law, § 10A-5A-1.01 et seq., Ala. Code 1975, the opinion of the attorney general observed that property owned by a limited-liability company vests in the limited-liability company itself, rather than in the individual members of the company, and that the members have no interest in the company's property. The opinion of the attorney general concluded:

> "Like a partnership, another intangible entity such as an LLC or a corporation cannot occupy and use property as a single-family residence. Only a natural person can do so. Therefore, when property is owned by an intangible legal entity such as a partnership, a corporation, or an LLC, the property does not qualify as Class III residential property."[4]

In response, WPI argues on appeal that entities, such as corporations, can both own and use property. In support, it cites, among other things, § 10A-1-2.11, Ala. Code 1975. That Code section provides that "a domestic entity has the same powers as an individual to take

---

[4]"While an opinion of the attorney general is not binding, it can constitute persuasive authority." Alabama-Tennessee Nat. Gas Co. v. Southern Nat. Gas Co., 694 So. 2d 1344, 1346 (Ala. 1997). We express no opinion as to the correctness of Att'y Gen. Op. No. 2007-043, which we instead discuss to explain Faust's argument on appeal.

action necessary or convenient to carry out its business and affairs," which include the power to "purchase, lease, or otherwise acquire, receive, own, hold, improve, <u>use</u>, and deal in and with property or an interest in property." § 10A-1-2.11(3) (emphasis added). It further cites the Alabama Comment to § 10A-5A-1.01, Ala. Code 1975, which states, in part: "The rules governing limited liability companies are phrased in terms of 'activities and affairs,' reflecting the fact that limited liability companies can be used for purposes other than carrying on a business (<u>e.g.</u>, holding title to property, estate planning)." WPI argues that, in light of this authority, "the Alabama legislature intended entities to have all of the powers of individuals with respect to real property, with no exclusion for single-family residential property/dwellings." WPI's brief at 21.[5]

WPI then argues that entities can "occupy" residences through the acts of their agents. Specifically, it notes cases indicating that corporations act through their agents, citing <u>Townsend Ford, Inc. v. Auto-</u>

_____

[5]There is some dispute between the parties as to whether Texas law governing corporations, instead of Alabama law, should apply in this case. The parties primarily rely on Alabama law, and it is not clear that Texas law requires a different result. Therefore, we apply Alabama law.

Owners Insurance Co., 656 So. 2d 360, 363 (Ala. 1995) ("A corporation is a legal entity, an artificial person, and can only act through agents."), and it quotes Epperson v. First National Bank of Reform, 209 Ala. 12, 13, 95 So. 343, 344 (1923), which states: "In the line of his assigned duties, the agent stands in the place of the corporation." WPI argues: "[E]ntity owners residing in a single-family residence, the title to which is vested in an entity, are occupying that residence on behalf of the entity and not on their own behalf." WPI's brief at 24.

The issue in this case, as set out by Weinrib, supra, is whether the condominium is "being used by [WPI] as its dwelling." 1 So. 3d at 1035. That an entity has "the same powers as an individual to take action necessary or convenient to carry out its business and affairs," § 10A-1-2.11, does not mean that all the possible "affairs" of individuals can be "affairs" of an entity. In other words, just because individuals "live" in a "dwelling" does not mean that an entity can "live" in a dwelling. That an entity, by statute, is granted the "powers" of individuals does not mean that the exercise of such powers is always possible.

It is true that a corporate entity, such as WPI, "can act only through its servants, agents, or employees." United States Fid. & Guar. Co. v.

11

Russo Corp., 628 So. 2d 486, 488 (Ala. 1993). However, those acts "are not the acts of the corporation unless the servants, agents, or employees are acting for the corporate entity -- unless their acts are done in or about the duties assigned them or are accomplished within the line and scope of their duties." Id. Reviewing this issue de novo, Dow, supra, we see no authority for the proposition that living in a condominium -- occupying property as one's "dwelling" -- is either an act that is capable of being performed by a corporate entity or an act that an agent can perform on behalf of a principal.

The owner of the condominium was WPI, and, as indicated in the amended complaint, John and Rebecca -- not WPI -- used and occupied the condominium. Although John and Rebecca were members of WPI, "[a] member has no interest in any specific property of a limited liability company or a series thereof." § 10A-5A-4.02, Ala. Code 1975. We hold that because WPI, as the owner of the property, did not exclusively use the condominium as its dwelling, the condominium cannot be classified as Class III property.

The trial court relied on the fact that the condominium was not rented to a third party as evidence that it was Class III property instead

of Class II property. While the fact that an owner is renting out property may be indicative of, among other things, the property's use, it is not the sole criteria to be used in determining whether the owner occupies property and uses it as the owner's single-family dwelling.

## Conclusion

The summary judgment entered in favor of WPI is reversed, and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Stewart, C.J., and Bryan, Mendheim, and Cook, JJ., concur.